**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION**

LADONNA CRUTCHFIELD,
    Plaintiff,

Hon. Brandy R. McMillon
Case No.: 25-cv-10514

- vs -

CITY OF DETROIT, *et al*,
    Defendants.
_____/

| | |
|---|---|
| LAW OFFICES OF IVAN L. LAND, P.C., <br> Ivan L. Land Sr. (P65879) <br> Attorney for Plaintiff <br> 25900 Greenfield, Rd., Ste. 210 <br> Oak Park, MI 48237 <br> (248) 968-4545 <br> Ill4law@aol.com | CITY OF DETROIT LAW DEPARTMENT <br> Gregory B. Paddison (P75963) <br> Attorney for Defendants <br> Coleman A. Young Municipal Center <br> 2 Woodward Avenue, Suite 500 <br> Detroit, MI 48226 <br> (313) 237-0435 <br> paddisong@detroitmi.gov |

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUESTS FOR ADMISSION TO PLAINTIFF

Now Comes Plaintiff, LaDonna Crutchfield, and states the following in Plaintiff's Response To Defendants' Request for Admissions To Plaintiff.

## REQUESTS FOR ADMISSION TO PLAINTIFF

1. Admit that on July 30, 2025, Defendants served Plaintiff with an Offer of Judgment ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1

██████████████████████████████

**RESPONSE:** *Admit.* _____
LaDonna Crutchfield

2. Admit that Plaintiff did not respond to this Offer within fourteen (14) days and it is therefore deemed to be withdrawn.

**RESPONSE:** *Admit.* _____
LaDonna Crutchfield

3. Admit that during the pendency of this action, Plaintiff has the duty to supplement his/her Responses to Requests for Admission, Interrogatories, and Requests for Production if Plaintiff learns that that in some material respect the disclosure or response is incomplete or incorrect.

**ANSWER:** *Admit.*

4. Admit that on January 23, 2024, Officers from the Fugitive Apprehension Services Team who are named as Defendants in this matter ("FAST"), asked Plaintiff to step outside her home before telling her that she had to go to jail.

**ANSWER:** *Admit.*

5. Admit at the time the FAST Officers told Plaintiff that she had to go to jail, Plaintiff's front door was closed.

**ANSWER:** *Denied. The front door was open.*

6. Admit that the reason Plaintiff was given by the FAST Officers for her having to

2

go to jail, was for missing a court appearance.

**ANSWER:** *Admit.*

7. Admit that the FAST Officers told Plaintiff that they did not want to arrest her in front of her children.

**ANSWER:** *Admit.*

8. Admit that the FAST Officers permitted Plaintiff to walk from her home to a police vehicle prior to being placed in handcuffs.

**ANSWER:** *Admit.*

9. Admit that Plaintiff was taken into police custody on January 23, 2024, at approximately 2:15 p.m.

**ANSWER:** *Admit.*

10. Admit that when handcuffing Plaintiff, the FAST Officers interlocked two (2) sets of handcuffs.

**ANSWER:** *Plaintiff neither admits nor denies as Plaintiff does not know what interlocked two (2) sets of handcuffs are.*

11. Admit that after transporting Plaintiff to the Detroit Detention Center ("DDC") Officer Joshua Holder added a third set of interlocked handcuffs.

**ANSWER:** *Plaintiff neither admits nor denies as Plaintiff does not know what interlocked three (3) sets of handcuffs are.*

3

12. Admit that Plaintiff did not inform the FAST Officers that the handcuffs were too tight or were causing her physical harm.

**ANSWER:** *Denied, Plaintiff informed officers that the handcuffs were too tight or were hurting her, and officers loosened the handcuffs. Also, Plaintiff asked the officers if she could be handcuffed in the front because she has asthma and the officers declined, and handcuffed her in the back stating that it was against department policy to handcuff her in the front.*

13. Admit that Plaintiff did not suffer a physical injury as a result of being handcuffed.

**ANSWER:** *Denied, Plaintiff had a panic attack as well a fast heartbeat. Also, plaintiff had a difficult time breathing because she was handcuffed behind her back.*

14. Admit that Plaintiff was fingerprinted and a DNA sample was obtained from Plaintiff upon arrival at the DDC on January 23, 2024, prior to her interview with Det. Marc Thompson ("Det. Thompson") and Officer Careema Yopp ("Officer Yopp").

**ANSWER:** *Denied, Plaintiff's fingerprints were taken when she first arrived at the Detroit Detention Center. After, the interrogation by Detective Thompson and Officer Yopp, Plaintiff's thumbprints were taken as well as her DNA.*

4

15. Admit that Det. Thompson and Officer Yopp's interview with Plaintiff while at the DDC began at approximately 4:45 p.m.

**ANSWER:** *Admit.*

16. Admit that Det. Thompson and Officer Yopp's interview with Plaintiff concluded at approximately 5:20 p.m.

**ANSWER:** *Admit, Plaintiff was interrogated for 35 minutes.*

17. Admit that at the conclusion of Det. Thompson and Officer Yopp's interview with Plaintiff, Det. Thompson informed Plaintiff that he needed to go back to his office and complete some paperwork so that Plaintiff could be released immediately (as alleged in Paragraph 66 of Plaintiff's Complaint).

**ANSWER:** *Denied, Detective Thompson told Plaintiff that she needed to finish being processed and that he needed to get back to his office to turn some paperwork in so that Plaintiff could be released.*

18. Admit that at the conclusion of Det. Thompson and Officer Yopp's interview with Plaintiff, Det. Marc Thompson offered to personally drive Plaintiff home (as alleged in Paragraph 67 of Plaintiff's Complaint).

**ANSWER:** *Denied. Detective Thompson told Plaintiff that if she was not released that night, that he would personally come back to the Detroit Detention Center the next day to take Plaintiff home.*

5

19. Admit that at the conclusion of Det. Thompson and Officer Yopp's interview with Plaintiff, Det. Thompson offered to personally drive Plaintiff to his precinct the following day to have her fingerprints and DNA "cleared" or "wiped" from police records.

**ANSWER:** *Denied. Detective Thompson did not mention anything about that.*

20. Admit that at the conclusion of Det. Thompson and Officer Yopp's interview with Plaintiff, Det. Thompson volunteered to prepare a letter for Plaintiff to give to her employers or others who may have inquired about why Plaintiff was taken into police custody.

**ANSWER:** *Denied. Plaintiff went back to the police station and ask to speck to Detective Thompson. She requested that Detective Thompson give her something in writing to show her employer that she was innocent. Detective Thompson refused to give Plaintiff anything in writing, but he instead wanted to call Plaintiff's employer. Plaintiff explained that her employer needed something in writing and Detective Thompson reluctantly supplied Plaintiff with a letter.*

21. Admit Plaintiff was released from police custody on January 23, 2024, at approximately 8:05 p.m.

**ANSWER:** *Admit.*

22. Admit that on January 24, 2024, Det. Thompson provided Plaintiff with a letter

6

to give to her employers or others who may have inquired about why Plaintiff was taken into police custody.

**ANSWER:** *Admit, see question 20 above.*

23. Admit that on January 24, 2024, Plaintiff's fingerprints and DNA record was "cleared" or "wiped" from police records.

**ANSWER:** *Plaintiff neither admits nor denies as Plaintiff does not know whether anything was cleared of wiped.*

24. Admit that Sheila Lloyd a/k/a Sheila Crutchfield, is the mother of Plaintiff, LaDonna Crutchfield.

**ANSWER:** *Admit.*

25. Admit that Sheila Lloyd a/k/a Sheila Crutchfield, has resided at ▉ St., Detroit, Michigan.

**ANSWER:** *Plaintiff neither admits nor denies as Plaintiff as Plaintiff's mother couldn't remember her address on Hillsboro.*

26. Admit that Sheila Lloyd a/k/a Sheila Crutchfield, has resided at ▉ St., Detroit, Michigan.

**ANSWER:** *Admit, that she has resided at ▉ Detroit, Michigan.*

Respectfully submitted,

Date: September 25, 2025

*/s/ LaDonna Crutchfield*

LaDonna Crutchfield

7