UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION

LADONNA CRUTCHFIELD,
Plaintiff,

Hon. Brandy R. McMillon
Case No.: 25-cv-10514

- vs -

CITY OF DETROIT, *et al*,
Defendants.

_____/

### AFFIDAVIT

STATE OF MICHIGAN   )
                    )  ss.
COUNTY OF WAYNE     )

I, Anthony Williams, being first duly sworn, deposes and states as follows:

1. I am a competent person over eighteen (18) years of age.

2. I make this Affidavit based on personal knowledge and review of available records, and if sworn as a witness, I can testify competently to the facts stated herein.

3. I am a Sergeant with the Detroit Police Department ("DPD") currently assigned to the Detective Bureau. However, as of January 23, 2024, I was assigned to DPD's Fugitive Apprehension Services Team ("FAST"), a position I held from August of 2021 until May of 2025.

4. FAST is joint task force between DPD and the Wayne County Sherriff's Department organized under the Violent Crime Reduction section of DPD. The FAST unit's sole responsibility is the apprehension of suspects wanted in connection with the commission of violent felonies.

5. FAST Officers play no role in the investigation of alleged crimes.

1

6. All persons designated for apprehension by FAST will either be the subject of an active Felony Arrest Warrant(s) or identified by an investigating officer as a felony suspect for whom probable cause to arrest has been established.

7. Upon receiving an apprehension request, a FAST embedded analyst will prepare a Person of Interest Report ("POI") for the subject of the apprehension. The POI Report will generally contain some or all the following information:

   a. The nature of the underlying crime;

   b. A brief synopsis of the facts establishing probable cause;

   c. The officer-in-charge ("OIC") of the underlying criminal investigation;

   d. Photographs of the suspect;

   e. Known aliases of the suspect;

   f. The suspect's criminal history;

   g. A physical description of the suspect;

   h. Known addresses and phone numbers;

   i. Family members, known associates, and co-occupants of known addresses; and

   j. Other available and potentially relevant information.

8. On or about, January 19, 2024, I was assigned as the officer-in-charge OIC of the FAST apprehension of Ms. LaDonna Crutchfield ("Ms. Crutchfield").

9. The POI Report relative to Ms. Crutchfield, stated that she was wanted in connection with an Assault with intent to Murder ("AWIM") occurring on December 28, 2023.

10. The POI Report stated further that Detective Marc Thompson ("Det. Thompson") had established probable cause for Ms. Crutchfield's arrest through his

investigation, based upon the following:

    a. The physical appearance, features, description, and characteristics of Ms. Crutchfield, matching those of the shooting suspect derived from surveillance video and images;

    b. That Ms. Crutchfield had been linked to the owner of the vehicle used to flee the scene of the shooting, through her mother's registered address; and

    c. That Ms. Crutchfield had a child registered to her address matching the age of a child observed with the suspect on the night of the shooting.

11. Given these considerations, I did not find it necessary to question Det. Thompson further regarding the facts, circumstances, or evidence uncovered during his investigation before briefing the FAST Team members who were assisting in the apprehension.[1]

    a. Because FAST Officers have no role in underlying criminal investigations, a FAST OIC will typically question a criminal investigator about a requested apprehension only if the POI Report is clearly lacking material information, the person identified at the time of the apprehension has substantially different physical attributes as the suspect identified in the POI Report, or other exceptional circumstances arise that would cause a reasonable officer to question the legitimacy or accuracy of the apprehension request.

12. On the afternoon of January 23, 2024, I and members of FAST arrived at Ms. Crutchfield's home for the purpose of placing her under arrest.

13. During the course of this apprehension, Ms. Crutchfield, although compliant, questioned the basis for her arrest.

    a. Based upon my recollection, Officer Dorian Hardy informed Ms. Crutchfield that her arrest was in relation to a failure to appear in Court.

---

[1] Dorain Hardy, Jeremy Morrow, Joshua Holder, Matthew McKinney, and Sabrina Carrion.

3

    b. Misrepresenting the reason for an arrest is a de-escalation tactic occasionally used by FAST during the apprehension of felony suspects, as experience has proven that suspects are less likely to flee or resist, while under the impression that their apprehension is related to a minor or technical offense that can be easily remedied.

14. After Ms. Crutchfield informed myself that her children were present in the home, I also attempted to maintain a calm situation by advising her that although she was being taken into custody, that it was not our intention to place her under arrest in the presence of her children.

15. Once it was confirmed that a second adult was also present in the home,[2] and could monitor the children in Ms. Crutchfield's absence, Ms. Crutchfield obtained shoes, a jacket, and her cell phone from inside the home, before being walked from the residence, without handcuffs, to a police vehicle parked several residential lots away, out of sight of her children.

16. Although Ms. Crutchfield requested that she be handcuffed in front of her body, this is not permitted by DPD policy for the safety of officers, barring truly exceptional circumstances.

    a. However, to ensure Ms. Crutchfield's comfort and to maintain a calm, non-confrontational situation, two sets of interlocking handcuffs were used to secure Ms. Crutchfield in custody.

    b. At no time did Ms. Crutchfield claim, allege, or complain of the handcuffs causing her pain or discomfort, nor did she complain of any other form of distress.

17. Aside from a protective pat-down performed by Officer Sabrina Carrion, the only female officer assigned to the FAST unit tasked with the apprehension, no search of Ms. Crutchfield's person, home, vehicle, or property, was conducted by any member of FAST.

18. Throughout the entirety of Ms. Crutchfield's apprehension, Ms. Crutchfield was complaint and accordingly, the absolute minimum amount of force (*i.e.*, placing

---

[2] Upon information and belief, Ms. Crutchfield's niece.

4

her in handcuffs) was used to effectuate the arrest.

**FURTHER AFFIANT SAYETH NOT.**

/s/ _____
Sgt. Anthony Williams

Subscribed and sworn to before me this 3rd day of March, 2026.

/s/ _____
LISA SZWAST, Notary Public
MACOMB County, Michigan
My Commission expires: 1/9/2027
Acting in WAYNE County, Michigan

LISA SZWAST
Notary Public, State of Michigan
County of Macomb
My Commission Expires Jan. 09, 2027
Acting in the County of WAYNE

5