Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.901 Filed 03/03/26 Page 1 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

2016 WL 3626807
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Derian RAGGS, Plaintiff,
v.
PITTSFIELD CHARTER
TOWNSHIP, et al., Defendants.

Case No. 14-13946
|
Signed 07/07/2016

**Attorneys and Law Firms**

Shawn C. Cabot, Christopher Trainer and Assoc., White Lake, MI, for Plaintiff.

G. Gus Morris, McGraw Morris PC, Troy, MI, for Defendants.

### OPINION & ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Sean F. Cox, United States District Judge

 **\*1** Following his arrest on October 13, 2012, Plaintiff filed this action against two officers who arrested him, along with Pittsfield Charter Township, asserting claims under 42 U.S.C. § 1983 and state law. Following the close of discovery, Defendants filed a Motion for Partial Summary Judgment and Plaintiff also filed a Motion for Summary Judgment.

For the reasons set forth below, the Court shall GRANT Defendants' Motion for Partial Summary Judgment and grant summary judgment in Defendants' favor as to Counts II, III, IV, V, and VI of Plaintiff's Amended Complaint. That leaves only Count I, Plaintiff's § 1983 excessive force claim remaining.

The Court shall DENY Plaintiff's Motion for Summary Judgment in its entirety. As to Counts II through VI, Defendants are entitled to summary judgment in their favor, as explained below. As to Count I, the § 1983 excessive force claim, Plaintiff is not entitled to summary judgment because, construing the evidence in the light most favorable to the Defendant Officers, there are genuine issues of material fact as to whether Defendants used excessive force.

Accordingly, Plaintiff's § 1983 excessive force claim, Count I, is the only claim that will proceed to a jury trial in this matter.

### BACKGROUND

Plaintiff Derian Raggs ("Plaintiff" or "Raggs") filed this action on October 13, 2014. Plaintiff's Amended Complaint (Docket Entry No. 5), filed on December 2, 2014, is the operative complaint and it asserts claims against the following Defendants: 1) Matthew Kessler ("Kessler"); 2) Ryan Reppert ("Reppert"); and 3) Pittsfield Charter Township ("the Township"). Plaintiff's Amended Complaint asserts the following claims: 1) "Violation of the Fourth Amendment 42 U.S.C. § 1983 Excessive Force" (Count I); 2) "False Arrest/False Imprisonment" (Count II); 3) "Violation of Fourth Amendment 42 U.S.C. § 1983 Unreasonable Seizure Without Probable Cause" (Count III); 4) "Malicious Prosecution" (Count IV); 5) "Violation of the Fourth Amendment 42 U.S.C. § 1983 Malicious Prosecution" (Count V); and 6) "Pittsfield Charter Township's Constitutional Violations" (Count VI).

Following the close of discovery, both Plaintiff and Defendants filed summary judgment motions. Plaintiff filed a "Motion for Summary Judgment Pursuant to FRCP 56 Against Defendants Matthew Kessler and Ryan Reppert" (Docket Entry No. 26) and Defendants filed a Motion for Partial Summary Judgment. (Docket Entry No. 23).

This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record...

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.902 Filed 03/03/26 Page 2 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

**\*2** c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 30 at 2-3).

In compliance with this Court's guidelines, in support of their Motions for Partial Summary Judgment, Defendants filed a "Statement of Material Facts Not In Dispute" (Docket Entry No. 24) ("Defs.' Stmt. A). In response to that submission, Plaintiff filed a "Counter-Statement of Disputed Facts" (Docket Entry No. 28 at 8-13) (Pl.'s Stmt. A").

In support of Plaintiff's Motion for Summary Judgment as to Kessler and Reppert, Plaintiff filed a "Statement of Material Facts Not in Dispute" (Docket Entry No. 26 at 9-12) ("Pl.'s Smt. B") but Defendants did not file a counter-statement responding to it.

Because the Court will be addressing Defendants' Motion for Partial Summary Judgment first, the Court includes here the facts viewed in the light most favorable to Plaintiff.

**May 13, 2012 Incident**
In the early morning hours of May 13, 2012, Raggs arrived at his girlfriend's apartment at 4159 Chester Drive in Pittsfield Township, Michigan. (Defs.' and Pl.'s Stmt. A at ¶ 1).

At 3:20 a.m., the Pittsfield Township Public Safety Department received, via telephone, a noise complaint about a vehicle in the parking lot at the apartment complex. (Ex. 2 to Defs.' Motion). The report indicates that the caller reported the noise was coming from a car in the parking lot but the caller could not identify the vehicle. (*Id.*).

Officer Kessler and Sergeant Reppert were both dispatched to the area of 4175 Chester Drive regarding the noise complaint. (Ex. 3 to Defs.' Br.; Kessler Dep. at 23).

Kessler testified that dispatch did not advise him, and he therefore did not know, if the noise complaint was coming from a male, a female, or more than one person. He also did not have a description of the vehicle. (Kessler Dep. at 23-24; Ex.). Kessler drove to the apartment complex at a normal rate of speed and did not activate the patrol car's lights or sirens. (Kessler Dep. at 26).

Kessler arrived at the apartment complex at 3:24 a.m. (*Id.*). When he first pulled into the parting lot, Kessler did not hear any music or noise. (Kessler Dep. at 30). But as he drove through the parking lot, Kessler was listening for music and looking for occupied cars or cars with loud stereos playing. (Kessler Dep. at 30).

Kessler heard the music before seeing Raggs in his car. (Kessler Dep. at 34). During his deposition, Kessler estimated that he first heard the music when he was between 50 and 75 feet away from Raggs's car. (*Id.* at 31-32). After hearing the music, Kessler used a spotlight and observed Raggs sitting in the driver's seat of his parked car. (Kessler Dep. at 34).

At this time, Raggs was the only person in the parking lot. That is, there were no other people in their vehicles or standing around. (Kessler Dep. at 31).

It is undisputed that Raggs was sitting in the driver's seat of his parked car, with the stereo on. (Raggs Dep. at 52-56). Raggs testified that he had his windows rolled down because he was smoking a cigar before entering the apartment, where his infant child was staying. (Raggs Dep. at 49-50). Raggs testified that his vehicle was still running when he exited it and the stereo was still playing. (Raggs Dep. at 55-56).

**\*3** Kessler and Raggs then both exited their respective vehicles at about the same time. Raggs testified that he exited his vehicle because he wanted to see what was going on in the complex, as to why the police were there. (Raggs Dep. at 57).

Raggs testified that he spoke to Kessler first, which is reflected on an audio recording of the exchange. (Ex. 5 to Defs.' Br.). That audio recording includes the following discernable exchange between Raggs and Kessler:

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.903 Filed 03/03/26 Page 3 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

Raggs was the first to speak, saying to Kessler, "What's up boss? You got a problem?" (Def.'s Ex. 5 at 3:25.37). Kessler responded that someone had called about a noise complaint and asked to see Raggs's "ID." The conversation continued, with Kessler asking to see Raggs's ID and telling him he was investigating a noise complaint.

At approximately 3:26:09, Raggs said, "I don't give a fuck what you investigating, I told you if they heard music I just put it up." (Defs.' Stmt. A & Pl.'s Stmt. A at ¶ 13; Defs.' Ex. 5 at 3:26:09).

The situation is then heard escalating, without video of the encounter. It is undisputed that, at some point during the encounter, Plaintiff was tasered by one of the officers. Plaintiff was then arrested and taken to jail.

**Subsequent Criminal Charges Against Raggs**
After the incident, Raggs was charged with two counts of resisting and obstructing. (Defs.' and Pl.'s Stmt. A at ¶ 19).

The district court concluded that the officers had probable cause to arrest Raggs on the night in question. At the preliminary examination, the district court bound Raggs over on those two counts of "Assaulting/Resisting/Obstructing, a violation of MCL 750.81d." (Ex. 6 to Defs.' Br. at 4).

The Washtenaw County Circuit Court (Judge Melinda Morris), however, disagreed with the probable cause ruling by the district court and ultimately granted Raggs's motion to quash the information. (*Id.*)

**ANALYSIS**

**I. Defendants' Motion For Partial Summary Judgment**
In Defendants' Motion for Partial Summary Judgment, Defendants concede that, viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to Count I, Plaintiff's excessive force claim. But Defendants seek summary judgment in their favor as to all other counts.

**A. Are Kessler And Reppert Entitled To Qualified Immunity As To Counts III And V?**

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.*; *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). This "insulation from federal civil rights litigation bestowed upon state governmental personnel by qualified immunity sweeps broadly, affording them 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Scott v. Clay County, Tenn.*, 205 F.3d 873 n.9 (6th Cir. 2000) (citations omitted).

**\*4** Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

Here, Defendants Kessler and Reppert raise the defense in the instant Motion for Summary Judgment, filed after the close of discovery.

"Qualified immunity is an affirmative defense, and a defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). "Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established. *Id.* "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

Under the "clearly established" inquiry, the question is whether the right was so clearly established that a reasonable official would understand that what he or she is doing violates the law. *Jones v. Byrnes*, 585 F.3d at 975. "The essential

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.904 Filed 03/03/26 Page 4 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

inquiry is whether the defendant had fair warning that his [or her] actions were unconstitutional." *Hensley v. Gassman*, 693 F.3d 681, 693–94 (6th Cir. 2012). This inquiry must be undertaken in the consideration of the specific context of the case, not as a broad proposition. *Jones,* 585 F.3d at 975. In order to make such a showing, Plaintiffs need to direct the Court to a Supreme Court or Sixth Circuit case wherein a similar legal and factual scenario as that presented here was found to have resulted in a constitutional violation. *Bray, supra.*

In order to show that an arrest violated a constitutional right, the plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Similarly, a malicious prosecution under federal law also requires that a plaintiff prove a lack of probable cause. *Id.*

**1. Neither Of The State Court Probable Cause Rulings Are Binding In This Case.**

As preliminary matter, the Court considers whether either of the state-court rulings regarding probable cause are binding in this action. They are not. *See Hardesty v. Hamburg Twp.*, 461 F.3d 646, 651 (6th Cir. 2006) (explaining that "the cases applying Michigan law have all held that police officer defendants in a § 1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the case" and, "[t]herefore, collateral estoppel cannot be used offensively to preclude the litigation of an issue addressed in an associated criminal case."); *see also Bourgeois v. Strawn*, 452 F.Supp.2d 696, 708 (E.D. Mich. 2006).

**2. The Officers Are Entitled To Qualified Immunity Because There Was Arguable Probable Cause To Arrest Raggs For An Offense Under Michigan Law.**

In seeking summary judgment as to Raggs's § 1983 claims against the officers, Defendants assert that summary judgment is warranted because the officers had probable cause to arrest Raggs on the night in question. Moreover, because they are seeking qualified immunity as to these claims, the officers stress that they are entitled to qualified immunity if they can even show that they had "arguable probable cause" to arrest Raggs – for any offense – on the night in question. Defendants' motion directs the Court to *Amis v. Twardesky*, ___ Fed.Appx. ____, 2015 WL 8538446 (6th Cir. 2015) and *McLeod v. Bender*, 2015 WL 1470071 (E.D. Mich. 2015).

**\*5** In *Amis*, the Sixth Circuit affirmed a district court's ruling that an officer was entitled to qualified immunity as to a false arrest claim. On the date of the plaintiff's arrest, November 7, 2011, the plaintiff was arrested for harboring a fugitive. "After her arrest for harboring a fugitive, [the plaintiff] was eventually charged with resisting and obstructing a police officer. On January 12, 2012, the obstruction charge was dismissed and [the defendant] re-arrested [the plaintiff] for accessary after the fact. The state court judge dismissed the accessory after the fact charge for lack of probable cause.*"* *Amis, supra*, at *1. The plaintiff filed § 1983 claims against the officer for false arrest and malicious prosecution. The district court grant summary judgment on those claims on the basis of qualified immunity and the plaintiff appealed.

The Sixth Circuit affirmed the district court's qualified immunity ruling. In doing so, it explained:

> Here, [plaintiff's] section 1983 claim alleges false arrest in violation of her Fourth Amendment rights. To show that an arrest violated a constitutional right, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). **The officer can lawfully arrest the plaintiff so long as there is probable cause to arrest her for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest**. *Devenpeck v. Alford*, 543 U.S. 146, 153, 155, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.") **An officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent."** *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (citations omitted). **"[E]ven if a factual**

Case 2:25-cv-10514-BRM-DRG  ECF No. 55-29, PageID.905  Filed 03/03/26  Page 5 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

**dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful**." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).

*Id.* at *2 (bolding added for emphasis).

The appellate court then noted that the defendants asserted that there was probable cause to arrest the plaintiff for three different crimes: 1) accessory after the fact; 2) harboring a fugitive; and 3) resisting and obstructing a police officer.

The court concluded that the officer was entitled to qualified immunity because he "could reasonably have believed he had probable cause to arrest" the plaintiff for two of those three offenses (resisting and obstructing an officer and accessory after the fact).

The court noted the distinction between a standard summary judgment ruling on such claims and a qualified immunity ruling by stating: "[p]erhaps a reasonable jury could find that the information known to defendants when they arrested [the plaintiff] fell short of probable cause. But that would require this court to find that no reasonable officer in those circumstances could have believed that [the plaintiff] intended to hinder the arrest of Angela and acted upon that intent, or refuses to comply with the officers' lawful order." *Id.* at *5.

Judge Laurie Michelson, explained this distinction more expressly in *McLeod*. Judge Michelson noted that the "first layer" of the analysis is the constitutional standard as to what constitutes probable cause and the "second layer" is the qualified-immunity standard. She explained that "[p]utting the two layers together, the inquiry before the Court becomes more forgiving" to the defendant officers and they are entitled to qualified immunity if they can establish that they had arguable probable cause, even if a court later determines that they did not have actual probable cause. *Id.* at *9.

**\*6** In the analysis portion of that decision, Judge Michelson concluded that the probable-cause inquiry, standing alone, would be a close call under the facts in that case. *Id.* at *10. But when you consider the ultimate question of whether a reasonable police officer in the same circumstances could have reasonably believed that probable cause existed, it was clear that the officer was entitled to qualified immunity:

In all, whether there were reasonable grounds to believe that the person Howe arrested was one of the two suspects Bender saw at the Sebring is not easily resolved-as further reflected in the differing opinions of the state court judges who grappled with the issue. [1]

But for precisely this reason Bender is entitled to qualified immunity. In other words, because it is arguable that a reasonable officer with Bender's knowledge and in Bender's circumstances would have reasonably believed that McLeod was one of the two suspects who fled from Bender, Bender is qualifiedly immune from suit based on a claim that he lacked probable cause for McLeod's arrest. See *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) ("Insofar as the question of probable cause here is a close one, reasonable officials could disagree as to whether probable cause existed. Thus, the defendant officers are entitled to qualified immunity on [Plaintiffs] Fourth Amendment seizure claim." (internal citation omitted)); *cf. Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").

*Id.* at * 11.

In response to the framework outlined by Defendants in their motion, Plaintiff asserts that Defendants are relying on two unpublished decisions that are not binding on this Court, *Amis* and *McLeod*.

But the framework set forth in *Amis*, and followed in *McLeod*, is not unique to those two unpublished decisions. There are a number of published Sixth Circuit cases that set forth these same guiding principles, for example:

- *Kennedy v. City of Villa Hills, Kentucky*, 635 F.3d 210, 214 (6th Cir. 2011): "[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.), *cert. denied*, 554 U.S. 903, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008).

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.906 Filed 03/03/26 Page 6 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful."

- *Goodwin v. City of Painesville,* 781 F.3d 314, 333 (6th Cir. 2014): "The validity of an arrest "does not depend on whether the suspect actually committed a crime...."

*Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Rather, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."

*Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). The Fourth Amendment standard for probable cause requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo,* 443 U.S. at 37, 99 S.Ct. 2627. The qualified immunity doctrine requires that "probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness."

*Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir. 1993). The reasonableness of an officer's probable cause determination is a question of law. *Id.* (citing *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991))."

\*7 - *Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir. 1993): "Our starting point is that probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness. Reasonableness is a question of law to be decided by the trial judge. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). We already have determined that Officer Heavrin's probable cause determination was wrong, so we are left only to determine its reasonableness," and concluding that it was reasonable and the officer was therefore entitled to qualified immunity.

That is the whole point of qualified immunity – it protects all but the plainly incompetent and those who knowingly violate the law. As the Supreme Court has explained, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials —like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

Accordingly, Officers Kessler and Reppert are entitled to qualified immunity if they could have reasonably, even if mistakenly, believed that they had probable cause to arrest Raggs for an offense under Michigan law on the night in question. Thus, if viewing the facts in the light most favorable to Raggs, an officer reasonably could have believed that he had probable cause to arrest Raggs, then Kessler and Reppert are entitled to qualified immunity.

Here, Defendants assert that the officers had probable cause to arrest Raggs for: 1) violating the Pittsfield Township Noise Ordinance; and 2) for violating Michigan's Motor Vehicle Code by not producing his driver's license when asked to do so by a police officer.

It is undisputed that Pittsfield Township has a noise ordinance. It provides, in pertinent part, that "[i]t shall be unlawful for any person to create, assist in creating, permit, continue, or permit the continuance of any unreasonably loud, disturbing, unusual or unnecessary noise that either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others within the limits of the township." Sec. 14-214 of Pittsfield Township Charter. The ordinance further provides that certain specified acts are "declared unreasonably loud, disturbing, or unnecessary noises and are unlawful and prohibited, including "the playing of any radio... [or] stereo...in such a manner or with such volume, at any time or place as to annoy or disturb the quiet, comfort or repose of persons in any office, dwelling, hotel or other type of residence or of any person in the vicinity." Sec. 14-215 of Pittsfield Township Charter.

Defendants also contend that the officers could have reasonably believed that Raggs violated Michigan's Motor Vehicle Code, M.C.L. § 257.311, which provides:

> The licensee shall has his or her operator's or chauffeur's license, or the receipt described in section 311a, in his or her immediate possession at all time when operating a motor vehicle, and shall display the same upon demand

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.907 Filed 03/03/26 Page 7 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

of any police office, who shall identify himself or herself as such.

M.C.L. § 257.311.

In furtherance of their position that the officers could have reasonably believed that they had probable cause to arrest Raggs on the night in question, Defendants direct the Court to a 2003 case that interprets M.C.L. § 257.311, *People v. Moton*, 2003 WL 22928919 (Mich. App. Dec. 11, 2003). In that case, the defendant's arrest came after she refused to produce her driver's license following a request to do so from a Michigan State Trooper. Rather than producing her driver's license, defendant got out of her car and went into the post. When the trooper followed her into the post and tried to arrest her, the defendant physically resisted. The defendant was later convicted by a jury of resisting arrest and other charges. On appeal, the defendant argued that her arrest was not lawful because she was not operating a motor vehicle at the time of her arrest.

**\*8** The Michigan Court of Appeals noted that the "arrest which defendant resisted was the failure to display her operator's license to Trooper Lass upon request. If defendant was not obligated to do so, then there was no lawful basis for an arrest and, therefore, she is not guilty of resisting arrest." *Id.* at \*1. The court noted there was no dispute that the defendant refused to produce her driver's license when the trooper asked for it. Thus, the question became "one of statutory interpretation: is a person obligated to produce their operator's license when the person and the vehicle are in a parking lot?" *Id.* In answering that question in the affirmative, the court explained:

> [T]he Michigan Vehicle Code defines "operating" to mean "being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur." MCL 257.35a.
>
> Defendant argues that she was not an "operator" of the motor vehicle as that term is defined in MCL 257.36, which requires that the "operator" be "in actual physical control of a motor vehicle upon a highway," because the state police post parking lot does not constitute a highway. But that overlooks the fact that MCL 257.311 does not require an "operator" to display his license to the police upon request. Rather, the statute requires that a person "operating" a motor vehicle must have his operator's license in his possession and display it to a police officer upon demand. Therefore, the relevant definition is "operating" not "operator." As noted above, a person is "operating" a motor vehicle if they are in actual physical control of the motor vehicle without regard to whether it is on a highway or not.

*Id.* at \*1-2. As such, even though the defendant had parked her vehicle in the parking lot and turned the vehicle off before the trooper asked to see her license, the appellate court affirmed the defendant's conviction.

Here, at 3:20 a.m. on Wednesday, May 13, 2012, the Pittsfield Township Public Safety Department received a noise complaint about a vehicle parked in the parking lot of the Ridgewood apartment complex playing loud music. Officer Kessler arrived *just four minutes later* and soon observed Raggs in the area where the complaint was made. Raggs was sitting in a running parked car, smoking a cigar, with the windows rolled down and music playing. There were no other persons in cars or in the parking lot at this time, which was approximately 3:30 a.m. on a Wednesday night.

Kessler and Raggs each exited their respective vehicles and approached each other. Notably, the vehicle that Raggs had been sitting in was still running, with the windows down and the stereo playing, after Raggs left the vehicle. Thus, under *Motton*, Raggs was an operator of the vehicle. And the noise complaint under investigation was a noise complaint emanating from a running motor vehicle.

Significantly, when Raggs learned that Kessler was there to investigate a noise complaint, Raggs responded, "If they heard music, I just put it up" – suggesting that Raggs had very recently been playing the stereo louder than its current volume." Kessler asked Raggs, several times, for his "identification," which for the vast majority of adults, consists of a driver's license. Raggs refused to show the officer any identification and later stated that his name was "John Doe."

The Court agrees with Defendants that, construing the admissible evidence presented to this Court in the light most favorable to Plaintiff, a reasonable officer could have believed that he had probable cause to arrest Raggs for violating Pittsfield Township's noise ordinance and Michigan's Motor Vehicle Code, based upon the totality of the circumstances that were known at the time of the arrest.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.908 Filed 03/03/26 Page 8 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

**\*9** Accordingly, the Court shall grant summary judgment in favor of Defendants as to Counts III and V, based upon qualified immunity.

### B. State Law Claims

In challenging Plaintiff's state-law claims (Count II False Arrest/ False Imprisonment and Count IV Malicious Prosecution), Defendants make two arguments.

#### 1. Lack Of Actual Probable Cause

Defendants first argue that they are entitled to summary judgment because the existence of probable cause is fatal to each of these state-law claims. That is a correct proposition of law. Accordingly, if the Court determines that, even when construing the evidence in the light most favorable to Plaintiff the officers had actual (as opposed to arguable) probable cause to arrest Raggs, then Defendants are entitled to summary judgment as to Counts II and IV. This Court does conclude that actual probable cause existed to arrest Raggs.

Because the issue of whether actual probable cause existed is somewhat of a close call in this case, however, the Court will proceed to analyze Defendants' other challenges to these two counts.

#### 2. Other Challenges

In addition to arguing that actual probable cause existed and is fatal to these claims, Defendants also challenge these state-law claims on other grounds.

As to Raggs's state-law claim for false arrest, Defendants contend that even if actual probable cause did not exist, Kessler and Reppert are still entitled to governmental immunity because Raggs cannot show that the arrest was not in good faith and was undertaken with malice.

Under Michigan law, a lower-level governmental employee, such as a police officer, is entitled to governmental immunity if: 1) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority; 2) the acts were undertaken in good faith, or were not undertaken with malice, and 3) the acts were discretionary as opposed to ministerial. *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008).

An officer's decisions regarding an arrest are considered both discretionary and within the scope of their authority. *Id.; see also Norris v. Lincoln Park Police Officers*, 292 Mich.App. 574, 579 (2011). Thus, to defeat Defendant Kessler and Reppert's claim of governmental immunity, Raggs must show that Defendants "utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity." *Odom*, 482 Mich. at 475.

Notably, "[t]he good-faith element of [this] test is subjective in nature. It protects a Defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a Defendant who acts with malicious intent." *Id.* at 481–82. Accordingly, to be protected by governmental immunity in the context of a false arrest, a police officer need not have probable cause or even a reasonable belief that there is probable cause. "[A] police officer would be entitled to immunity [...] if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Odom*, 482 Mich. at 482 (citing *Ross v. Consumer Powers Co.*, 420 Mich. 567 (1984)).

**\*10** Here, Raggs has presented no evidence to show that Defendants acted with malice and without good faith in arresting Raggs on the night in question.

Similarly, the absence of malice is fatal to the malicious prosecution claims asserted against both Kessler and Reppert.

"Under Michigan law, [Raggs] must show an absence of probable cause, and he must show 'malice.' " *Newman v. Township of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (citing *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365 (1998)). "That requires evidence that the officer 'knowingly sw[ore] to false facts...without which there is no probable cause,' " which is "a standard that is more demanding than establishing mere recklessness." *Newman*, 773 F.3d at 773 (citing *Payton v. City of Detroit*, 211 Mich.App. 375 (1995)).

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.909 Filed 03/03/26 Page 9 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

As to Defendant Reppert, Raggs has not even suggested that he knowingly swore to any false facts. (*See* Pl.'s Resp. Br.). As such, Raggs's malicious prosecution claim against Reppert clearly fails.

As to Kessler, Raggs asserts that he "changed his story" about when he first heard the music. (*Id.*). During his September 23, 2015 deposition in this case, Kessler testified that he did not hear any music when he pulled into the parking lot and "estimated" that he first heard music when he was 50 to 75 feet away from Raggs's vehicle:

> Q. Were you pretty far away when you heard the stereo from Mr. Raggs' car?
>
> A. Define "far away."
>
> Q. Why don't you tell me. How far away were you when you first heard it?
>
> A. I think if my memory serves me correctly, it would be past the center drag that connected Ridgewood and Chester Drive.
>
> Q. So about how close is that to where he was?
>
> A. I don't know. I'm estimating again, 50 to 75 feet.

(Kessler Dep. at 30-32). Kessler further testified that he did not recall what his testimony had been at Raggs's preliminary exam as to the distance. (*Id.* at 77).

Counsel for Raggs contends that Kessler testified at the preliminary exam that he heard music from about 5 feet away. (Pl.'s Resp. Br. at 29-30). But Raggs does not present the Court with any transcripts from the preliminary examination from the state-court action – which occurred before the state district court, not before Judge Morris. (*See* Judge Morris's Opinion at 4). Rather, Counsel simply directs the Court to Judge Morris's opinion, wherein she states that Kessler "testified that he heard noise coming from the car when he was five or ten feet away." (Judge Morris's Opinion at 2).

Moreover, even if Plaintiff presented the Court with admissible evidence that Kessler testified that he did not hear any music until he was five feet away from Raggs's vehicle, the Court fails to see how that could be construed as evidence that Kessler deliberately swore to false facts to support the criminal prosecution because the alleged testimony in the criminal case *would have been more favorable to Raggs* than the testimony Kessler gave in this case.

The Court concludes that, on this record, no reasonable juror could conclude that Kessler deliberately swore to false facts that led to his criminal prosecution.

### C. *Monell* Liability

Defendants assert that Plaintiff cannot establish municipal liability in this action. Defendants contend that Rags "failed to plead or identify any custom, policy or practice that allegedly caused the purported underlying constitutional violation" and dismissal of Raggs's *Monell* claim (Count VI) is therefore warranted. (Defs.' Br. at 17).

**\*11** It is well-established that a local government is only liable under § 1983 for its own wrongdoing and not under any theory of respondeat superior. A municipality may, however, "be held liable under § 1983 if it maintained a policy or custom that caused the violation" of the plaintiff's rights. *Harvey v. Campbell County*, 453 Fed.Appx. 557, 562 (6th Cir. 2011). "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must identify the policy, connect the policy to the County itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).

Here, however, Plaintiff does not base his claims against the Township on any actual custom or policy. Rather, Plaintiff's § 1983 claim against the Township is a claim predicated upon a "failure to train" or "failure to supervise" theory of municipal liability. (Pl.'s Resp. Br. at 30-32).

As explained by the Sixth Circuit in *Regets v. City of Plymouth*, 568 Fed.Appx. 380, 394 (6th Cir. 2014):

> "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of*

*Cnty. Comm's v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "This Court has identified two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise." *Ellis*, 455 F.3d at 700. The first is the "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Id.* at 701 (internal quotations and citation omitted). The second type of "deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.* at 701 (internal quotations and citation omitted). To establish deliberate indifference, a plaintiff must show "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012) (internal quotation marks omitted).

*Regets*, 568 Fed.Appx. at 394.

### 1. Failure-To-Train Theory

In support of its argument that municipal liability can be imposed against the Township on a failure-to-train theory, Plaintiffs assert:

> Pittsfield Township failed to train its officers. Defendant Reppert testified that Pittsfield Township's use of force training is sporadic, and it failed to train officers regarding citizens resisting unlawful arrests. (Ex. B, P. 8). Defendant Kessler admitted than officer is supposed to give a warning before using a taser, but he did not know Pittsfield Township's policy. (Ex. C, pp. 21, 22). He further testified officers only go over policies occasionally during briefing if they have time. (Ex. C, p. 22).

(Pl.'s Resp. Br. at 30-31).

The cited portion of Reppert's deposition testimony does not support Plaintiff's claim that the officers failed to train officers on use of force. Reppert testified as follows:

*12 Q. Do you get use of force training?

A. Yes.

Q. How often does that occur?

A. We don't have a regular schedule.

Q. So it's sporadic?

A. Yes.

Q. Then why don't you just tell me the last time you recall that you had it.

A. The last I recall was, I believe it was in 2014 here at the station.

Q. And what about before that?

A. Probably within two years of that, also here at the station.

Q. Do you have any idea before then, if at all?

A. I wouldn't say we've gone more than two years without it at any one time.

(Reppert Dep. at 8). In addition, Reppert testified that while he was unsure if the Township had an actual policy regarding giving a warning before using a taser, he testified that he was trained that he should give a warning before using a taser, if reasonably possible. (Reppert Dep. at 21).

And even more importantly, Plaintiff has not shown that the Township knew of prior unconstitutional actions by its officers and failed to respond. That is, the "record does not disclose any history of similar incidents or any basis from which a fact finder could conclude that the [Township] had notice that officer training regarding" use of force was deficient. *Regets, supra*, at 394-95. As such, Plaintiff cannot establish municipal liability on the part of the Township based upon a failure-to-train theory of liability.

### 2. Failure-To-Supervise Theory

Plaintiff also seeks to establish municipal liability against the Township on a failure-to-supervise theory of liability.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-29, PageID.911 Filed 03/03/26 Page 11 of 12

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

As explained by the Sixth Circuit, similar to a failure-to-train theory of municipal liability, "to sustain a failure-to-supervise claim," the plaintiff must show that the Township acted with "deliberate indifference" to the risk of the constitutional violation and that its deliberate indifference was the "moving force" behind the violation. *Amerson v. Waterford Twp.,* 562 Fed.Appx. 484, 492 (6th Cir. 2014).

In support of this theory of municipal liability, Plaintiff relies on *Kammeyer v. City of Sharonville,* Ohio, 2006 WL 1133241 (S.D. Ohio 2006), and asserts that the Township does not conduct performance evaluations on its officers:

> Similar to the facts in *Kammeyer*, Defendant Pittsfield Township does not conduct performance evaluations on its police officers. (Ex. B, p. 8). Further, Defendant Reppert recommended that Defendant Kessler be disciplined for entering a female's apartment without her consent; however, after he forwarded it up the chain of command, he never heard anything about this serious matter. (Ex. B, p. 11).

(Pl.'s Resp. Br. at 31-32).

Plaintiff's reliance on that unpublished, non-binding case should be rejected, for same reason it was rejected by the Sixth Circuit in *Amerson,* and by several judges in this district in a host of district court decisions. *Amerson,* 562 Fed.Appx. at 492; *Fedie v. Livingston Cty,* 2010 WL 2287310 at * 7 (E.D. Mich., J. Zatkoff 2010); *Marcilis v. Redford Twp.,* 757 F.Supp.2d 663, 682 (E.D. Mich. Zatkoff 2010); *Shirley v. City of Eastpointe,* 2013 WL 4666890 (E.D. Mich. 2013, J. Rosen); *Garigiola v. City of Brighton,* 2010 WL 104605 (E.D. Mich., J. Battani). The facts of the cases are simply not analogous, as explained by Judge Battani:

> **\*13** The case upon which Plaintiff relies, *Kammeyer v. City of Sharonville,* No. 1:01-CV-00649 2006 U.S., Dist. LEXIS 24058, 2006 WL 1133241 (S.D. Ohio April 26, 2006), is not analogous. In that case, the municipality failed to review or discipline an officer during his thirty-two years of employment despite numerous complaints by citizens that would have put it on notice. In addition, in *Kammeyer,* there was evidence that the entire command staff reported dissatisfaction with the defendant's job performance. The court found that the *Monell* standard may be satisfied where a serious failure to supervise employees amounts to deliberate indifference to the rights of persons with whom the employees come into contact.

*Garigiola, supra,* at * 6.

Here, as in the above cases, Plaintiff simply cites *Kammeyer* and presents evidence that the officers did not regularly receive performance evaluations. That "alone is not enough to show deliberate indifference, especially in the absence of evidence of a pattern of" excessive force or unlawful arrests, or other circumstances tending to show that the Township was aware or could have been aware that these officers were prone to unwarranted application of force and/or making arrests without probable cause.[2] *Amerson, supra*, at 492.

The Court shall grant summary judgment in favor of the Township with respect to Count VI.

## II. Plaintiff's Motion for Summary Judgment

In Plaintiff's Motion for Summary Judgment, Plaintiff asks the Court to grant summary judgment in his favor as to all claims.

With respect to Counts II through VI, Defendants are entitled to summary judgment in their favor, as explained above.

As to Count I, the excessive force claim, Plaintiff is not entitled to summary judgment because, construing the evidence in the light most favorable to the Defendant Officers, there are genuine issues of material fact as to whether Defendants used excessive force.

Raggs v. Pittsfield Charter Township, Not Reported in Fed. Supp. (2016)

Case 2:25-cv-10514-BRM-DRG   ECF No. 55-29, PageID.912   Filed 03/03/26   Page 12 of 12

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED and Counts II, III, IV, V, and VI of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3626807

---

### Footnotes

1   In that case, like the situation here, the state court judges who considered the probable cause issue reached different conclusions.

2   Plaintiff submits evidence that Reppert reported Kessler for entering a woman's apartment without her consent to a supervisor. But that is not the same type of conduct that is alleged here. Thus, such an incident could not put the Township on notice that Kessler was prone to using excessive force or making arrests without probable cause.

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.