Case 2:25-cv-10514-BRM-DRG  ECF No. 55-31, PageID.925  Filed 03/03/26  Page 1 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

2024 WL 4220711
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

Scott Aaron BLACK, Plaintiff,
v.
CITY OF ROYAL OAK, Nathan Heppner, Joshua Little, and Terry Oaks, Defendants.

Case No. 23-12371
|
Signed September 17, 2024

**Attorneys and Law Firms**

Scott Aaron Black, Royal Oak, MI, Pro Se.

Kali M. L. Henderson, T. Joseph Seward, Seward Peck & Henderson PLLC, Royal Oak, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [15] AND DISMISSING COMPLAINT [1]

LAURIE J. MICHELSON, UNITED STATES DISTRICT JUDGE

*1 On a Sunday in May 2022, Scott Black was watching his daughter's little league soccer game when he was allegedly threatened by the team's coach. A Royal Oak patrol car was parked nearby, so Black walked over to tell Officer Joshua Little what happened. Black was loud and angry, as is clear from Little's body cam footage and the body cam footage of other officers who soon arrived. He yelled profanities and refused to calm down, despite repeated requests from the officers who told him he was engaging in disorderly conduct and scaring the young children playing soccer nearby. After his tirade went on for several minutes, Black was arrested for disorderly conduct. He was taken to the police station, booked, and released with a disorderly conduct citation after less than 40 minutes in police custody. The charge against him was later dismissed.

Four months later, Black filed this *pro se* 42 U.S.C. § 1983 suit against the City of Royal Oak and three Royal Oak police officers: Sergeant Nathan Heppner and Officers Joshua Little and Terry Oaks. (ECF No. 1.) He brings claims of Fourth Amendment false arrest, false imprisonment, malicious prosecution, and unlawful search and seizure, and First Amendment retaliation. The defendants now move to dismiss Black's complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) They assert that Black has failed to state any viable claim and that the officers are entitled to qualified immunity.

Given the clear record and adequate briefing (*see* ECF Nos. 16–18), the Court considers the motion without further argument, *see* E.D. Mich. LR 7.1(f). For the reasons below, the Court GRANTS Defendants' motion to dismiss.

## I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "This standard does not require 'detailed factual allegations.' " *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation omitted). But "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In assessing whether a plaintiff has met his burden, the Court accepts as true the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the light most favorable to the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *see also Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562–63 (6th Cir. 2011).

Further, when a litigant is unrepresented by counsel, the Court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). That said, basic pleading requirements "apply to self-represented and counseled plaintiffs alike," *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (citations omitted); *see Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188,

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.926 Filed 03/03/26 Page 2 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

190 (6th Cir. 2004), and "the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations," *Perry v. UPS*, 90 F. App'x 860, 861 (6th Cir. 2004).

**\*2** Generally, whether a plaintiff has sufficiently pled his claims is answered based on the complaint alone. *See* *Caraway v. Corecivic of Tenn., LLC*, 98 F.4th 679, 687–88 (6th Cir. 2024); Fed. R. Civ. P. 12(d). However, exhibits attached to a motion to dismiss can be considered if referenced in the complaint and central to the plaintiff's claims. *See* *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Sixth Circuit has applied this rule to video exhibits, including body cam footage. *See* *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (approving consideration of video evidence on motion to dismiss where the video "cover[ed] the whole [incident]" and "utterly discredit[ed]" plaintiff's version of events); *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at \*3 (6th Cir. Aug. 18, 2022) (affirming this Court's consideration of dash cam and body cam footage on motion to dismiss where "the complaint reference[d] the video," the video "captured the central events upon which the [plaintiff's] claims rely," and "neither party contested the inclusion of the videos"). It has also specifically noted that there is "good reason" to consider videos when assessing a motion to dismiss based on qualified immunity. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("[W]hen uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.").

Here, Defendants attach officers' body camera footage to their motion to dismiss. (*See* Video Exs. 1–4.) Black specifically references "police body camera" in his complaint (ECF No. 1, PageID.5), does not contest the inclusion of the videos (*see generally* ECF No. 17), and the footage "covers the whole" incident, *Bailey*, 860 F.3d at 386, including "the central events upon which [Black's] claims rely," *Reynolds*, 2022 WL 3500191, at \*3. So the Court will consider the body cam footage. In so doing, the Court "view[s] the facts in the light depicted by the videotape" and "need not credit the version of the party who asserts facts 'blatantly contradicted' by" the footage. *Cunningham v. Shelby County*, 994 F.3d 761, 763 (6th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). But "any relevant gaps or uncertainties left by the videos" must be viewed in the light most favorable to Black. *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

In sum, putting these standards together, the Court views the allegations in the light most favorable to Black, except where they are "wholly incredible," *Ruiz v. Hofbauer*, 325 F. App'x 427, 429–30 (6th Cir. 2009), or "blatantly contradicted" by the officers' body cam footage, *Cunningham*, 994 F.3d at 763.

## II. Factual Background

While attending his daughter's little league soccer game in May 2022, Black was allegedly threatened by the team's coach. (*See* ECF No. 1.) After seeing a patrol car parked nearby, Black walked over to Royal Oak Police Officer Joshua Little "to report the crime." (*Id.* at PageID.5; *see* ECF No. 15-2, Video Ex. 1, Little Body Cam, 00:00–00:10.)

With his voice raised, Black told Little what happened: "That guy right there in the white shirt and the white sunglasses came up, got in my face, and he said he was going to jack me in the face if I said something about his daughter refereeing. He made a threat, and I heard it.... I'm very angry." (Video Ex. 1, Little, 00:00–00:22.)

Black got louder as he spoke. Only 30 seconds into their conversation, Little told Black to "stop yelling." (*Id.* at 00:30–00:32.) In a calm tone, Little said, "I understand. Talk to me, okay?" (*Id.* at 00:32–00:34.) He asked Black, "Alright, so how did it start?" (*Id.* at 00:55–00:57.)

Black told his story from the beginning. He said the coach's daughter, who was acting as a referee for the game, called a goal against Black's daughter's team. (*Id.* at 1:06–1:20.) Black objected that she failed to call a foul. (*Id.* at 1:20–1:23.) The coach asked Black to not "talk to [his] daughter." (*Id.* at 1:28–1:31.) Black replied that the coach should "get [his] daughter a whistle" (*id.* at 1:36–1:37) "and tell her to call a handball next time" (*id.* at 2:13–2:15). In response, according to Black, the coach "got right in [Black's] face" and threatened that he would "fucking jack [Black] in the face if [he] talk[ed] to [his] daughter again." (*Id.* at 1:38–1:44.) But "no one else hear[d]

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.927 Filed 03/03/26 Page 3 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

this," Black exclaimed, because the coach was whispering. (*Id.* at 1:50–1:52; *see id.* at 0:16–00:21.)

 **\*3** As Black shouted, Little said, "Hey, calm down." (*Id.* at 1:50–1:53.) That only seemed to make Black more upset. He spread out his arms and told Little, "It's a free country, my friend. It's a free country. I'm on a sidewalk. I can be as loud as I want." (*Id.* at 1:52–1:57.) "Sure you can," said Little, "you're just making a bigger scene than it needs to be, right?" (*Id.* at 1:58–2:00.) Things escalated from there, with Black getting louder as he spoke:

> Black: Bigger scene than it needs to be? I just got threatened—
>
> Little: Okay.
>
> Black: —and I was sitting in a chair—
>
> Little: And I'm trying to—
>
> Black: —and someone's standing over me saying how—
>
> Little: Okay.
>
> Black: —how they're gonna fucking assault me—
>
> Little: Okay.
>
> Black: —over an innocent comment like—
>
> Little: Right.
>
> Black: —'Hey, get your daughter a—'
>
> Little: Would you just, okay—
>
> Black: —'whistle and tell her to call a handball next time, or maybe don't be a referee'—
>
> Little: Okay.
>
> Black: I don't know, but don't threaten me of physical violence on a, in a park, on a Sunday.
>
> Little: Okay.
>
> Black: And now everybody thinks I'm the fucking asshole!
>
> Little: Okay.

(*Id.* at 2:01–2:26.) Turning away, Black said, "This is fucking unbelievable." (*Id.* at 2:26–2:27.) Then he resumed yelling, this time while pointing to the soccer field. (*Id.* at 2:28–2:30.)

"I understand that," said Little, "but you screaming in the middle of a neighborhood in a soccer game right now—" (*Id.* at 2:30–2:34.) Black interrupted:

> Black: I can be as loud as I want!
>
> Little: No, you actu—
>
> Black: What law am I violating right now?!
>
> Little: Disorderly conduct.
>
> Black: What law am I violating screaming at you?

(*Id.* at 2:34–2:41.) Little then radioed for backup (*id.* at 2:41–2:42), and Black started pointing at Little and shouting for a "supervisor":

> Black: Supervisor!
>
> Little: It's called disorderly conduct.
>
> Black: Supervisor!

(*id.* at 2:42–2:46). Little paused, then responded in a calm, explanatory tone:

> Little: It's called disorderly conduct.
>
> Black: Bull. Shit.
>
> Little: Okay.
>
> Black: Have your supervisor come here and explain it to me. I can scream at you all I want, it's a free country.
>
> Little: Not, well, not when you're interrupting the public.
>
> Black: Interrupting the public?!
>
> Little: Yes, you're in a neighborhood.
>
> Black: I'm filing a complaint!
>
> Little: You're screaming.
>
> Black: I can scream! I can scream!
>
> Little: I'm trying—It doesn't solve anything, man.

(*Id.* at 2:47–3:07.)

Soon, Little asked Black, "Do you want me to talk to the other people and figure out what happened, or did you just want to yell?" (*Id.* at 3:14–3:17.) In a calmer voice, Black responded,

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.928 Filed 03/03/26 Page 4 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

"I'm pissed off." (*Id.* at 3:18.) "I understand you're pissed off," said Little, "I get that. But you're not solving any issues by screaming." (*Id.* at 3:19–3:24.) This upset Black again, and he interrupted Little to ask what he was going to do about his complaint. (*Id.* at 3:22–3:24.) Little said he was "trying to figure it out." (*Id.* at 3:24–3:26.)

The exchange continued that way until more Royal Oak officers arrived. (*Id.* at 3:26–4:00.) During the next 10 minutes, Black repeated his account, first to Officer Terry Oaks, then—frustrated neither were taking notes—to Little's body camera, then to nondefendant officer Jessica Reece (and her body camera), and finally to Sergeant Nathan Heppner. (*Id.* at 4:00–5:35; Video Ex. 2, Oaks Body Cam, 00:15–3:58; Video Ex. 3, Reece Body Cam, 1:10–6:12; Video Ex. 4, Heppner Body Cam, 00:09–00:13.)

Meanwhile, Little walked over to the soccer game to investigate Black's allegations. (Video Ex. 1, Little, 5:30–5:48; *see* ECF No. 1, PageID.5.) As he walked over, a woman approached Little and asked if "there [was] any chance he could even just tone the language down" or if the officers could put Black "in a car [so] he can scream in the car" instead of in front of the children. (Video Ex. 1, Little, 5:48–5:54.) Little asked if she had seen anything related to Black's complaint but she said no and pointed him toward the coach. (*Id.* at 6:03–6:08.)

**\*4** The coach shared his version of events (*id.* at 6:19–8:55), which was soon echoed by three women who had heard the exchange (*id.* at 9:06–10:58): The coach asked Black to "take it easy" on his 12-year-old daughter who was refereeing for the first time. When Black would not relent, the coach admitted that he told Black to "shut the fuck up"—but he never threatened Black or got in Black's face, and he tried to deescalate things by walking away. Meanwhile, Black "lost it" and tried to instigate things. The women elaborated that the coach had walked away from Black when Black said, "do you want to jack me in the face?" followed by, "the coach said he's going to fucking jack me in the face." (*Id.* at 9:52–10:05.) A "concerned" dad had videotaped the exchange, the coach added, but he would be too "afraid of [Black's] retaliation" to share the recording "in front of [Black]." (*Id.* at 8:47–8:55.)

By this time, Officer Oaks had joined Little's conversations with the three women and then with the husband of Black's ex-wife. (Video Ex. 2, Oaks, 6:05–7:48.) As they headed back to Black and the other officers, they were approached by the same parent who had walked up to Little before. She told them "the kids are getting freaked out because [Black] is still ranting." (*Id.* at 8:05–8:11; Video Ex. 1, Little, 11:52–11:56.)

When Little and Oaks returned, Black was arguing with Sergeant Heppner. (*See* Video Ex. 1, Little, 12:55–13:11; Video Ex. 2, Oaks, 9:06–9:29.) He shouted that Little and "three other [officers] ... threatened [him] with disorderly conduct." (Video Ex. 1, Little, 13:17–13:28; Video Ex. 4, Heppner, 1:55–2:05.) And he was again insisting that he could "talk as loud as [he] want[ed]," while Heppner was again explaining that "causing public alarm" constituted unlawful disorderly conduct. When Black started to get riled up again, repeating that "somebody threatened physical violence against [him]," Heppner told Black he was under arrest. (*See* Video Ex. 4, Heppner, 2:37–2:45; Video Ex. 2, Oaks, 10:14–10:20.) Oaks responded to what Black had said as he handcuffed him: "He didn't [threaten violence against you]. We have three witnesses that say you initiated and provoked the whole damn thing. So—which I actually tend to believe at this point, Scott. I do. I tend to believe that." (Video Ex. 2, Oaks, 10:21–10:30.)

Little put Black in his patrol car (Video Ex. 1, Little, 15:09–15:14), and Reece announced that she was placing Black's cell phone on the hood (Video Ex. 3, Reece, 9:46–9:54; Video Ex. 4, Heppner, 3:33–3:40). The officers apparently forgot to retrieve it before Little drove off. (*See* ECF No. 1, PageID.6; Video Ex. 1, Little, 18:17–27:02.) But Oaks had Black's phone, which appeared undamaged, when he met Little at the Royal Oak police station. (Video Ex. 1, Little, 26:56–27:11; *see also id.* at 48:47–52:12. *But see* ECF No. 1, PageID.6.)

At the police station, Little uncuffed Black (Video Ex. 1, Little, 28:50–29:10), and another officer explained that Black was charged with only one offense, disorderly conduct, and would be able to leave without having to post bond (*id.* at 30:54–31:27). After Little finished the booking process, Black's property, including his phone, was returned, and he was given a ticket with a court date on it. (*Id.* at 48:47–52:12; *see id.* at 48:34–48:47.) Black was in police custody for just under 40 minutes. The disorderly conduct charge against Black was later dismissed at some unspecified point. (*See* ECF No. 1, PageID.5.)

Four months later, Black filed this suit against the City of Royal Oak and three Royal Oak police officers, alleging constitutional violations under 🚩 42 U.S.C. § 1983. (*Id.*) He seeks compensatory and punitive damages, including $10,000 for each of the 39 minutes he was "falsely arrested

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.929 Filed 03/03/26 Page 5 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

and wrongfully detained." (*Id.* at PageID.6.) In short order, Defendants moved to dismiss Black's complaint. (ECF No. 15.)

### III. Black's Constitutional Claims Against the Officers

**\*5** Black brings several overlapping constitutional claims against Defendants under § 1983: "First Amendment Retaliation, Fourth Amendment Illegal Search and Seizure, False Arrest, Wrongful Imprisonment, [and] Malicious Prosecution." (ECF No. 1, PageID.4.)

In response, the officers assert that Black has failed to plead that any constitutional violation occurred, thus entitling them to qualified immunity and dismissal under Rule 12(b)(6). *See Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022) ("[I]f the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings."). They contend that each of Black's claims fail for the same reason: he has not adequately alleged that the officers lacked probable cause. As Defendants put it, "[i]f Plaintiff cannot show an absence of probable cause, his Fourth and First Amendment claims under § 1983 fall 'like a house of cards.' " (ECF No. 15, PageID.214 (quoting *Hartman v. Thompson*, 931 F.3d 471, 483 (6th Cir. 2019))); *see also Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) ("As we have said, the presence of probable cause for a prosecution or pretrial detention dooms any Fourth Amendment claim." (citations omitted)).

The Court agrees with the officers: Black has failed to plead a constitutional violation so his claims must be dismissed.

Qualified immunity is "an officer-friendly doctrine," *Williams v. City of Flint*, 814 F. App'x 973, 979 (6th Cir. 2020), that "allows police officers 'breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law,' " *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1017 (6th Cir. 2024) (quoting *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013) (per curiam)). Under § 1983, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Parsons v. City of Ann Arbor*, No. 22-1338, 2023 WL 3413898, at \*2 (6th Cir. May 12, 2023) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015)); *see Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." (citation omitted)).

And because qualified immunity is "a defense not just against liability, but against suit itself," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)), a government official's entitlement to qualified immunity "is a threshold question to be resolved at the earliest possible point," *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Indeed, "one of the goals of qualified immunity is not only to help defendants avoid unnecessary trials but also to allow defendants to avoid pre-trial discovery where the lawsuit is 'insubstantial.' " *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 808, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). So when "the validity of a qualified immunity defense" is "apparent from the face of the complaint," *Batton v. Sandusky County*, No. 23-3168, 2024 WL 1480522, at \*2 (6th Cir. Apr. 5, 2024) (quoting *Crawford*, 15 F.4th at 763), it is "entirely appropriate" for the Court to grant a motion to dismiss, *Witzke v. Rieck*, No. 21-11346, 2022 WL 2541131, at \*4 (E.D. Mich. July 7, 2022).[1]

**\*6** Once a defendant raises the defense, the burden is on the plaintiff to show the Court should not grant qualified immunity. *Moseley*, 790 F.3d at 653. The Court takes the facts in the light most favorable to the party asserting injury and asks two questions: do the facts show that the officer's conduct violated a constitutional right, and was the right clearly established such that "every reasonable official would have understood that what he is doing violates that right"? *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015); *see Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017); *Crawford*, 15 F.4th at 764. And on a motion to dismiss, "it need only be 'plausible' that an official's acts violated a clearly established constitutional right." *MacIntosh v. Clous*, 69 F.4th 309,

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.930 Filed 03/03/26 Page 6 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

315 (6th Cir. 2023) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). The Court may address the questions "in any order." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. 808). If the answer to either question is "no," the defendant is entitled to qualified immunity. See *Cunningham*, 994 F.3d at 764.

### A. Unconstitutional Arrest Claims

Black fails to state plausible claims for false arrest [2] under the Fourth Amendment and retaliatory arrest under the First Amendment because Black's arrest was supported by probable cause, so the officers did not violate his constitutional rights and therefore are entitled to qualified immunity.

Because an arrest is a "seizure" within the meaning of the Fourth Amendment, it must be "reasonable," i.e., supported by probable cause, to be constitutional. *See, e.g.*, *Courtright*, 839 F.3d at 521; *United States v. Hairston*, 402 F. App'x 84, 87 (6th Cir. 2010). So a plaintiff alleging false arrest under § 1983 "[must] prove that the arresting officer lacked probable cause to arrest' " him. *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (alteration in original) (quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). Conversely, a showing of probable cause defeats a Fourth Amendment false arrest claim. *See id.*; *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014) ("[P]robable cause provides a complete defense to a claim of false arrest.").

The same is true of a First Amendment retaliatory arrest claim. "[I]f there is a showing of probable cause, a retaliatory arrest claim fails." *Hartman*, 931 F.3d at 484–85 (citing *Nieves v. Bartlett*, 587 U.S. 391, 408, 139 S.Ct. 1715, 204 L.Ed.2d 1 (2019)); *accord Nieves*, 587 U.S. at 404, 139 S.Ct. 1715; *Novak v. City of Parma* (*Novak II*), 33 F.4th 296, 304 (6th Cir. 2022). "Probable cause allows an officer to negate causation by establishing that unlawful conduct— not protected speech—motivated the arrest." *Frenchko v. Monroe*, 672 F. Supp. 3d 421, 457 (N.D. Ohio 2024), *appeal docketed*, No. 24-3116 (6th Cir. Feb. 14, 2024).

Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014); *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("If an officer had probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). "[P]robable cause exists when the totality of the circumstances known to an officer at the time [of the arrest] support[s] the reasonable belief that a criminal offense has occurred or is ongoing." *Saltmarshall v. Prime Healthcare Servs.-Garden City LLC*, 831 F. App'x 764, 768 (6th Cir. 2020). And in the qualified immunity context, an officer can prevail if he "reasonably but mistakenly" believed he had probable cause for an arrest. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see Dolbin v. Miller*, 786 F. App'x 52, 56–57 (6th Cir. 2019) (noting that "whether [the officers] *actually had* probable cause" is irrelevant to the qualified immunity inquiry, which turns only on "whether the officers ... had the *reasonable but mistaken belief* that they had probable cause").

**\*7** Because Black was arrested for disorderly conduct, the key question is whether a reasonable officer could have had probable cause to believe Black violated Royal Oak's disorderly conduct ordinance. And this question depends on another: whether the officers considered Black "disorderly" based solely on protected speech. Protected speech cannot serve as "the *sole* basis for probable cause," *Novak II*, 33 F.4th at 304 (emphasis added) (citing *Reichle v. Howards*, 566 U.S. 658, 668, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)), so the officers only had probable cause if they had an independent reason to conclude Black was disorderly, *see id.* at 304–05; *Nieves*, 587 U.S. at 401–02, 139 S.Ct. 1715.

#### 1. Underlying Offense

Before turning to those questions, a word about the relevant "offense." Black seems to confuse the "offense" he was arrested for with the "offense" he was reporting to the officers. (*See* ECF No. 17, PageID.338–339.) Only the former is relevant.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.931 Filed 03/03/26 Page 7 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

In connection with the claims Black has brought, the only relevant issue is whether the allegations in the complaint, including the dash cam video, support that the officers had probable cause to arrest Black for being disorderly while *reporting* the alleged incident. As Defendants put it, "[Black's] focus on the investigation into his conduct before the officers arrived[ ] ignores his conduct during the investigation; his yelling at the officers," among other things, "justified the arrest." (ECF No. 18, PageID.346.)

In short, the relevant offense for purposes of the probable cause inquiry is disorderly conduct.

### 2. Existence of Probable Cause

The Royal Oak City Code defines disorderly conduct to include "[m]ak[ing] unreasonable noise which tends to cause a public danger, alarm, disorder or nuisance" or "[w]ithout lawful authority, disturb[ing] any lawful assembly or meeting of persons." Royal Oak, Mich., City Code § 278-35(B), (D). In turn, the misdemeanor of "[d]isturbance of lawful meetings" is defined as "mak[ing] or excit[ing] any disturbance or contention in any ... park." *Id.* § 278-22; (*see* ECF No. 15, PageID.211.)

Under either definition, Defendants had probable cause to arrest Black.

Start with "unreasonable noise." The record is clear that Black was yelling and swearing for about 15 minutes within earshot of a park where children were both playing and watching a game of little league soccer. Black admits this on camera and in his filings—in his own words, he was "screaming at" officers (Video Ex. 1, Little, 2:38–2:42), "loudly complaining" (ECF No. 1, PageID.5), and "using ... 'obscene' language" (ECF No. 17, PageID.337). Officers' body cam footage plainly captures Black's angry and argumentative tone, rising volume, and repeated use of profanity. Notably, Black loudly told Little that the coach threatened to "fucking jack [Black] in the face" (Video Ex. 1, Little, 1:50–1:52) and that it was "fucking unbelievable" that onlookers thought Black was the one being "the fucking asshole" (*id.* at 2:24–2:27). He then repeated his allegations to each officer, telling Oaks, then Reece (then Reece again), and finally Heppner that the coach threatened to "fucking jack [Black] in the face." (Video Ex. 2, Oaks, 2:31–2:33, 2:38–2:40; Video Ex. 3, Reece, 1:07–1:25, 2:02–2:10, 4:45–4:50; Video Ex. 4, Heppner, 1:23–1:26.)

True, swearing alone cannot justify arrest, nor can yelling at police officers. *Williams*, 814 F. App'x at 981 (explaining that the Sixth Circuit "ha[s] clearly held" that "profanity and verbal abuse of [police] officers" "is not, standing alone, a basis for an arrest"); *Cruise-Gulyas v. Minard*, 918 F.3d 494, 495 (6th Cir. 2019) ("Fits of rudeness or lack of gratitude may violate the Golden Rule. But that doesn't make them illegal or for that matter punishable or for that matter grounds for a seizure."). But when a person goes beyond merely yelling or swearing and starts "making noise loud enough to inconvenience, annoy, or alarm another person," their arrest does not violate the First Amendment. *Hagedorn v. Cattani*, 715 F. App'x 499, 505 (6th Cir. 2017); *see id.* at 506 ("Hagedorn did not have an unfettered right to disturb Timberlake residents while engaging in protected speech."); *Ward v. Rock Against Racism*, 491 U.S. 781, 796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("[The g]overnment 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.' ... [T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." (citations omitted) (alteration in original)).

**\*8** Black crossed that line. He not only made noise—he made unreasonable noise. (*See, e.g.*, Video Ex. 1, Little, 2:34–2:41; Video Ex. 2, Oaks, 2:03–2:26.) And his conduct not only "tend[ed] to," but actually did, "cause a public ... alarm ... or nuisance," Royal Oak, Mich., City Code § 278-35(B), and "ma[d]e or excite[d] a[ ] disturbance ... in a[ ] ... park," *id.* § 278-22. Indeed, several parents complained to officers. (*See* Video Ex. 2, Oaks, 10:03–10:10 (Oaks telling Heppner, in Black's presence, "I just [talked to] several people that are very worried right now, especially because the seven-year-olds are seeing it. And they're very concerned now"); Video Ex. 3, Reece, 3:10–3:16 (Reece telling Black that "[s]omeone flagged down my police officer and said, 'Hey, there's a gentleman screaming and yelling' "); *see also* Video Ex. 1, Little, 11:52–11:56 (parent telling Little that "the kids are getting freaking out because [Black] is still ranting")); *cf. Hagedorn*, 715 F. App'x at 506 (concluding that officer had probable cause to arrest plaintiff for disorderly conduct because neighbor's complaint "would allow a reasonable person to believe that [plaintiff] was guilty of making unreasonable noise"). Each officer also told Black he was "causing public alarm" (Video Ex. 4, Heppner, 2:18–2:25; Video Ex. 3, Reece, 3:09–3:11), "interrupting the public" (Video Ex. 1, Little, 2:56–58), and "being a

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.932 Filed 03/03/26 Page 8 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

nuisance ... and drawing attention of others" (Video Ex. 2, Oaks, 00:36–00:39; *see* ECF No. 1, PageID.5). So the Court finds utterly unpersuasive Black's claim that "Defendants have confused 'public alarm' with public interest." (ECF No. 17, PageID.338.)

Thus, the pleadings amply support that the officers had probable cause to conclude Black was engaging in disorderly conduct. Each officer individually had his own probable cause based on observing Black's disorderly conduct during conversations with him. Indeed, each officer independently concluded and specifically told Black that he was violating the disorderly conduct ordinance. (Video Ex. 1, Little, 2:38–2:58; Video Ex. 2, Oaks, 00:29–00:39, 2:15–2:58; Video Ex. 3, Reece, 1:50–1:55, 2:58–3:35; Video Ex. 4, Heppner, 2:18–2:25.) If that were not enough, they also had the benefit of collective knowledge before they arrested Black—they shared their impressions with each other, so they knew Black's behavior had been ongoing despite each officer's attempts at de-escalation. *See Bauman v. Millisor*, No. 21-1527, 2022 WL 35470, at *4 (6th Cir. Jan. 4, 2022) (explaining that officers reasonably concluded plaintiff was disorderly based on both their individual observations and the information they "communicated ... among themselves before placing [plaintiff] under arrest"); *Brown v. Lewis*, 779 F.3d 401, 413 (6th Cir. 2015) (recognizing a qualified-immunity defense based on the collective-knowledge doctrine); *United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) ("[W]hen a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest.").

Resisting this conclusion, Black contends the officers could not have had probable cause to arrest him because he was exercising his right to free speech. He insists that everything he did or said was protected by the First Amendment because he was speaking on a public sidewalk and engaging in protected speech in the forms of "reporting [a] crime" and "complain[ing] about police misconduct." (ECF No. 1, PageID.5; *see* ECF No. 17, PageID.341; Video Ex. 1, Little, 1:52–2:00, 2:34–3:07). According to Black, "[r]eporting a crime no matter how loudly can not be considered an unreasonable noise under the [F]irst [A]mendment since it is a constitutionally protected activity" and "[o]bscene language can not be a crime under the First Amendment." (ECF No. 17, PageID.341.)

Black misunderstands the right to free speech and the reasons for his arrest.[3] He is correct that "[i]n public fora" such as sidewalks and parks, "the government's rights to 'limit expressive activity are sharply circumscribed.' " *Bible Believers v. Wayne County*, 805 F.3d 228, 246–47 (6th Cir. 2015) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948 (1983)). He is also correct that the First Amendment protects the right to petition the government, criticize police officers, and use profanity. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 513–14 (6th Cir. 2020); *Wood v. Eubanks*, 25 F.4th 414, 422, 425 (6th Cir. 2022) ("Criticism of the police, profane or otherwise, is not a crime." (quoting *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001))).

*9 But the right to free speech is not absolute. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009); *Leonard v. Robinson*, 477 F.3d 347, 359 (6th Cir. 2007) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)). Even "protected speech is not equally permissible in all places and at all times." *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007); *see United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004) ("[T]he mere fact that a certain category of speech is worthy of constitutional protection does not mean that it is 'equally permissible in all places and at all times.' " (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985))).

Here is the rub: "the guiding First Amendment principle [is] that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content," *Gerber v. Herskovitz*, 14 F.4th 500, 508–09 (6th Cir. 2021) (quoting *Snyder v. Phelps*, 562 U.S. 443, 477, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011)), but *all* speech, including protected speech uttered in a public forum, is subject to content-*neutral* restrictions on time, place, and manner, *see Phelps-Roper v. Strickland*, 539 F.3d 356, 362 (6th Cir. 2008) (citing *Ward*, 491 U.S. at 791, 109

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.933 Filed 03/03/26 Page 9 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

S.Ct. 2746); *Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002) ("Did [the plaintiff] have a constitutionally protected right to call [the defendant] an 'asshole' and castigate him as 'stupid?' The answer, we suggest, depends on the time, place, and manner in which [the plaintiff] so expressed himself.");

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 642, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." (citations omitted)). That is, the government can regulate speech because of the *way* it is spoken (manner) or the *context* in which it is said (time and place) so long as the regulation is indifferent to the speech's message (content neutral). *See Saieg v. City of Dearborn*, 641 F.3d 727, 735 (6th Cir. 2011); *M.A.L. v. Kinsland*, 543 F.3d 841, 850 (6th Cir. 2008).

And here, the record supports that *what* Black was saying, even assuming it was protected by the First Amendment, was incidental to *how* and *where* he was saying it. *See* *Hagedorn*, 715 F. App'x at 506 (concluding that plaintiff "could be prosecuted under" city's disorderly conduct ordinance "if her conduct constituted 'unreasonable noise,' even if she was otherwise engaged in protected speech"). Nothing suggests that the content of Black's speech—the fact that he may have been reporting an alleged threat, criticizing the officers for telling him he was being disorderly, or simply using profanity—led to his arrest. Instead, it is clear in the video footage that the officers hesitated to arrest Black, and when they eventually did arrest him it was based on his disorderliness—that Black was screaming incessantly and shouting profanities near young children, eliciting complaints from concerned parents, and resisting officers' repeated attempts to calm him down. Little summed it up well while en route to the police station. In response to Black saying he "got arrested for filing a police report," Little said, "No, you kept yelling and making a scene and you were warned multiple times and then you continued to make a scene in front of children and families and swearing, and we had no choice." (Video Ex. 1, Little, 20:22–20:37.)

**\*10** So Black fails to allege that the officers lacked probable cause to arrest him for disorderly conduct. And the record supports the opposite conclusion—that the officers indeed had probable cause to arrest Black under either the unreasonable-noise-public-alarm or the exciting-disturbance-in-a-park definition of disorderly conduct. Black has thus failed to plead his false arrest and retaliatory arrest claims, entitling the officers to dismissal under Rule 12(b)(6) and to qualified immunity.

The Court briefly notes that the probable cause that supported Black's arrest also supported his brief detention while he was booked. *See Maryland v. King*, 569 U.S. 435, 449, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) ("It is beyond dispute that 'probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest.' " (quoting *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975))); *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010) ("[T]he seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers." (quoting *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002))). And nothing suggests that Black's initial seizure was unreasonably prolonged. *See Miller v. Maddox*, 866 F.3d 386, 393–94 (6th Cir. 2017).

### B. Illegal Seizure Claim

Before turning to Black's malicious prosecution claim, the Court addresses one more claim Black seems to assert about his arrest: illegal seizure of his phone.

One of the claims Black lists is "Fourth Amendment Illegal Search and Seizure." (ECF No. 1, PageID.4.) As with each of his claims, he lists this on its own line, separate from "False Arrest" and "Wrongful Imprisonment." (*Id.*) In part, the Court understands this claim to encompass, and to be duplicative of, Black's false arrest claim, given that an arrest is a seizure within the meaning of the Fourth Amendment. Apart from that, the Court takes Black to be asserting an additional claim of illegal seizure of property. In the section of the complaint dedicated to relief, Black requests $1,150 for "[d]amage to [his] personal property when [his] cell phone was illegally removed from his person[ ] by Officer Little, [was] placed on the hood of Officer Little's Royal Oak police vehicle ..., and then ... fell onto the street and was damaged." (*Id.* at PageID.6.) Reading Black's request for relief alongside his claim of "[i]llegal ... seizure," the Court will briefly consider—and dismiss—Black's claim that his cell phone was unlawfully seized.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.934 Filed 03/03/26 Page 10 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

The Fourth Amendment prohibits unreasonable seizures of personal property, *see* *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2022), but it is not "unreasonable" within the meaning of the Fourth Amendment for police to seize items in the possession of a person being arrested, *see United States v. Cunningham*, 520 F. App'x 413, 416 (6th Cir. 2013) ("Police may search a person after his lawful arrest and may seize items found in his possession."). Officers are authorized to seize items within an arrestee's immediate proximity under the search-incident-to-a-lawful-arrest exception for warrantless searches. *See Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir. 1986).

As discussed, Black's arrest was lawful, as it was based on officers' probable cause. And Black's cell phone was on his person at the time of his arrest. So officers' mere seizure of Black's phone was permissible under the Fourth Amendment. *See United States v. Gholston*, 993 F. Supp. 2d 704, 710, 713–15 (E.D. Mich. 2014) (collecting cases approving warrantless seizures of cell phones incident to lawful arrest, *id.* at 710, and holding that defendant's cell phone was lawfully seized incident to his arrest, *id.* at 715); *cf. Riley v. California*, 573 U.S. 373, 388, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) ("Both Riley and Wurie concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant. That is a sensible concession." (citations omitted)); *United States v. Fullerton*, 187 F.3d 587, 591 (6th Cir. 1999) (concluding pager was lawfully seized incident to arrest). And at the very least, a constitutional right against cell phone seizure incident to arrest is not clearly established, making the officers entitled to qualified immunity.

**\*11** But the officers not only confiscated Black's phone, they also dropped it. Officers can "seize" personal property under the Fourth Amendment not only by taking it from one's person but also by "unreasonably damag[ing] or destroy[ing]" it. *Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 540–41 (6th Cir. 2012) (citing *Soldal v. Cook County*, 506 U.S. 56, 61–62, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)). But if the level of damage is not "unreasonable," *see Gardner v. Evans*, 920 F.3d 1038, 1050–51 (6th Cir. 2019), it does not rise to the level of "meaningful interference with an individual's possessory interests in that property" constituting a seizure, *Soldal*, 506 U.S. at 62–63, 113 S.Ct. 538 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); *see Dunigan v. Thomas*, No. 22-11038, 2023 WL 2215954, at \*15 (E.D. Mich. Feb. 24, 2023) (collecting cases in this District finding de minimis damage and no constitutional violation where, e.g., defendants cut a cable and broke a router).

To the extent Blake is asserting such a claim, it too fails. Nothing suggests the damage to his phone, if any, was unreasonable or more than de minimis. *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (holding that officers acted reasonably in cutting hole in wall in part because damage to defendant's property was "slight"); *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009) (concluding that officers' damage to plaintiff's property did not support Fourth Amendment claim "[b]ecause the alleged damage was *de minimis*"). The body cam footage shows Black's phone being returned to him in seemingly fine condition when he was released from custody. (Video Ex. 1, Little, 48:47–52:12; *see id.* at 26:56–27:11.) And even assuming some non-visible damage was done that was more than de minimis, Black fails to describe it. He has not asserted a plausible claim.

### C. Malicious Prosecution Claim

On to Black's malicious prosecution claim. This claim, like the others, fails because there was probable cause to prosecute Black. In turn, the officers did not violate Black's constitutional rights and are entitled to qualified immunity. *See, e.g., Weser*, 965 F.3d at 513 ("[O]ne of the elements of a federal malicious-prosecution claim ... is that a plaintiff must show 'that the officers helped start a prosecution against him without probable cause.' " (quoting *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020))).

"Whether probable cause exists to arrest a suspect is a distinct question from whether probable cause exists to prosecute an accused." *Mott v. Mayer*, 524 F. App'x 179, 187 (6th Cir. 2013) (citing *Sykes v. Anderson*, 625 F.3d 294, 310–11 (6th Cir. 2010)). Both are assessed based on the totality of the circumstances, but the probable-cause-to-prosecute inquiry turns on what the officer knew *at the time the offense was charged* rather than what he knew *at the time the arrest was made*. *See Thacker v. City of Columbus*, 328 F.3d 244,

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.935 Filed 03/03/26 Page 11 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

261 (6th Cir. 2003). And what the officer knew at the time of the charge must be sufficient to lead a reasonable person to believe not only that the accused committed *an* offense but that he committed *the particular offense charged. See* Mott, 524 F. App'x at 187.

Here, Black's citation was issued in very close proximity to the time of his arrest. Thus, the same evidence that shows the officers had probable cause to arrest Black for disorderly conduct—namely their body cam footage—also supports that they had probable cause to charge him with violating the ordinance. And Black fails to point to any post-arrest evidence that would alter that determination and indicate a lack of probable cause to prosecute. *See* Thomas v. McCabe, No. 23-10398, 2023 WL 8275973, at *5–6 (E.D. Mich. Nov. 30, 2023) (concluding that probable cause to prosecute for resisting arrest existed based on same dash cam footage that demonstrated probable cause to arrest); *cf.* Sykes, 625 F.3d at 311 ("We have already concluded that the Defendants lacked probable cause to arrest Sykes, and the Defendants have pointed to no evidence uncovered subsequent to Sykes's arrest that would call into question the jury's belief that there was no probable cause to initiate criminal proceedings against her."). The mere fact that the disorderly conduct charge against Black was ultimately dropped does not, as Black suggests (*see* ECF No. 1, PageID.5; ECF No. 17, PageID.341), mean that the officers lacked probable cause to charge and prosecute him, *see, e.g.,* Fisher v. Jordan, 91 F.4th 419, 425, 428 (6th Cir. 2024) (explaining that a finding of innocence or dismissal of charges has little to do with probable cause, which demands "far less than guilt beyond a reasonable doubt").

### IV. The City & *Monell* Liability

**\*12** Black also sues the City of Royal Oak, alleging the same constitutional claims. The City is entitled to dismissal of the claims against it for numerous reasons. In his complaint, Black (1) makes no factual allegations whatsoever against the City and thus (2) asks the Court to hold the City liable based only on the conduct of City employees. And the arguments in Black's response (3) are raised too late, not to mention (4) rely again on an impermissible theory of vicarious liability, (5) fail to establish an unconstitutional city policy or custom, and (5) fail to establish an underlying constitutional violation.

First, Black's complaint contains no factual allegations against the City. That alone is reason to dismiss his *Monell* claim. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Com. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted). Without any allegations as to *any* of the elements, Black cannot state a valid municipal liability claim.

Implicit in Black's complaint is his contention that the City is liable under § 1983 "based on the acts of its employees alone." Lipman v. Budish, 974 F.3d 726, 747 (6th Cir. 2020) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Beyond merely naming the City as a defendant (ECF No. 1, PageID.2), Black mentions the City in his complaint only to say that the individuals who allegedly violated his constitutional rights were Royal Oak Police Department officers (*see* id. at PageID.5). But it is well established that "local governments are responsible only for 'their *own* illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citations omitted). For municipal liability to attach, Black "must therefore specify a governmental policy or custom from which his injuries flowed"—and he has not done so. Brown v. Cuyahoga County, 517 F. App'x 431, 436 (6th Cir. 2013); *see* Jackson v. City of Cleveland, 925 F.3d 793, 828 (6th Cir. 2019) (explaining that a municipality may not be held liable under § 1983 "*solely* because it employs a tortfeasor" and that "a plaintiff must show that 'through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged' " (citations omitted)); Wright v. City of Euclid, 962 F.3d 852, 880 (6th Cir. 2020) (stating the four ways a plaintiff may prove a municipality's illegal policy or custom: official policy or legislation; action authorized by a designated decisionmaker; failure to train or supervise employees; or a custom of acquiescence in rights violations).

Black attempts to correct this in his response to Defendants' motion to dismiss. (*See* ECF No. 17, PageID.342–343.) But that fails to save the day.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.936 Filed 03/03/26 Page 12 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

First, Black's response cannot make up for deficiencies in his complaint. A Rule 12(b)(6) motion "is directed solely to the complaint itself," *Armengau v. Cline,* 7 F. App'x 336, 343 (6th Cir. 2001), and "tests only the sufficiency of the *complaint's* factual allegations," *Caraway,* 98 F.4th at 688. The Court "evaluate[s] the sufficiency of a claim based only on the four corners of the complaint," *id.* at 682 n.2, with limited exceptions for public records, attachments referenced in the complaint and central to the claims, and the like, *see id.*; *Com. Money Ctr., Inc.,* 508 F.3d at 336. The Court has discretion to consider allegations or evidence presented outside the complaint. But "[o]nce the defendant invokes qualified immunity, it is emphatically not the job of the court to salvage a complaint by taking judicial notice of facts the plaintiff should have included in an amended complaint." *Armengau,* 7 F. App'x at 345. [4]

**\*13** And even if the Court were to consider what Black argues in his response—if, for example, Black had properly raised his response arguments in his complaint or an amended complaint—he would still fail to state a *Monell* claim against the City.

Black asserts that "the Monell claim against the City is based on the fact that the three defendants violated Plaintiff's federal rights and worked as agents for the City of Royal Oak." (ECF No. 17, PageID.342.) This argument simply makes explicit what was implicit in Black's complaint: Black is claiming that the wrongdoing of City employees makes the City itself liable under § 1983. This is precisely what *Monell* forbids. "[M]unicipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas,* 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. 2018).

Black next says that "four out of the five responding Royal Oak Police Officers" committed the alleged constitutional violation and that "[t]his on its own constitutes a pattern of [sic] practice." (ECF No. 17, PageID.342–343.) Regardless of the number of officers involved, Black has alleged only a single instance. And "[a] single instance, without more, does not amount to a custom, policy or practice." *Jordan v. City of Detroit,* 557 F. App'x 450, 457 (6th Cir. 2014) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)); *see also Stewart v. City of Memphis,* 788 F. App'x 341, 347 (6th Cir. 2019) ("Arguing that 'one instance of potential misconduct' is evidence of a clear and persistent pattern is a 'path to municipal liability [that] has been forbidden by the Supreme Court.' " (quoting *Thomas v. City of Chattanooga,* 398 F.3d 426, 432–33 (6th Cir. 2005))); *Burley v. Sumner Cnty. 18th Jud. Drug Task Force,* No. 23-5172, 2023 U.S. App. LEXIS 25287, 2023 WL 9894461 (6th Cir. Sept. 22, 2023) ("[A] single incident cannot show Sumner County's 'tacit approval' through inaction.... Nor could three incidents ...." (citations omitted)).

Only in a "narrow range of circumstances" can a plaintiff rely on a "single incident" to establish liability: the plaintiff must assert a "failure to train" theory and must show that " 'the risk of the constitutional violation is so obvious or foreseeable' that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it." *Howell v. NaphCare, Inc.,* 67 F.4th 302, 319 (6th Cir. 2023) (quoting *Ouza v. City of Dearborn Heights,* 969 F.3d 265, 287 (6th Cir. 2020)); *see City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Black has not asserted the City's failure to train, "an already 'tenuous' theory of liability," and he certainly has not alleged a constitutional violation "so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Ouza,* 969 F.3d at 295 (quoting *Connick,* 563 U.S. at 64, 131 S.Ct. 1350). In short, Black "cannot establish a custom solely by pointing to the facts of his own case." *Payne v. Sevier County,* 681 F. App'x 443, 446 (6th Cir. 2017).

Next, Black asserts in his response that "[his] false arrest can be traced to the city's Disorderly Conduct ordinance" and that the ordinance "demonstrates the City's deliberate indifference to constitutionally protected activity." (ECF No. 17, PageID.343.) But such a vague allegation of a custom of tolerance or acquiescence plainly fails. *See, e.g., Wallace v. Coffee County,* 852 F. App'x 871, 876 (6th Cir. 2021) (explaining that a custom of tolerance or acquiescence is one that is "so widespread, permanent, and well settled as to have the force of law"); *Nichols v. Wayne County,* 822 F. App'x 445, 446 (6th Cir. 2020) (describing a "custom" for purposes of *Monell* liability as a "well settled course of action deliberately chosen from among various

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.937 Filed 03/03/26 Page 13 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

alternatives" (internal quotation marks and citation omitted)); *Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191, 196 (6th Cir. 2010) ("A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." (citation omitted)).

**\*14** The only "evidence" of municipal liability Black offers to support his conclusory assertions is the fact that the City reported "821 Disorderly Conduct crimes" in 2020, making disorderly conduct "the second most common crime ... the city prosecutes." (ECF No. 17, PageID.343.) But the mere frequency or relative frequency of the City's disorderly conduct prosecutions says nothing of consequence about what underlies the statistic—such as whether the prosecuted individuals suffered any injury let alone constitutional injury, whether the ordinance was the cause of the particular constitutional injury suffered, whether there was a clear and persistent pattern of constitutional injury sufficient to put the City on notice of an improper policy, or whether the City's conduct amounted to tacit approval of the unconstitutional conduct. [5] *See Wright*, 962 F.3d at 880 (explaining that the formal policy theory of *Monell* liability requires plaintiff to "show that the particular injury was incurred because of the execution of [the city's] policy"); *Wallace*, 852 F. App'x at 876 (explaining that the custom of tolerance theory of *Monell* liability requires plaintiff to show "existence of a clear and persistent pattern of [illegal activity]" and "notice or constructive on the part of the [defendant]" (alterations in original)).

In other words, Black falls far short of carrying his "heavy burden" of establishing a municipal policy or custom. *City of Chattanooga*, 398 F.3d at 433; *see id.* at 430–31 (concluding that plaintiff failed to establish an unwritten policy through "statistical evidence, consisting of some of the complaints" from 45 suits against the city's police department, reasoning that "the mere number of complaints in a vacuum" was conclusory, and noting that one missing piece of information was the number of complaints "in similarly-sized cities or in cities with a similarly sized police force").

Finally, and dispositive on its own, Black can have no *Monell* claim where no constitutional violation occurred. *See North v. Cuyahoga County*, 754 F. App'x 380, 389 (6th Cir. 2018) ("There must be a constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam))); *White v. City of Detroit*, 38 F.4th 495, 501 (6th Cir. 2022) (citing *Heller*, 475 U.S. at 799, 106 S.Ct. 1571); *Novak II*, 33 F.4th at 309 (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *see also Cuyahoga County*, 754 F. App'x at 389 (noting the "more complicated question," not relevant here, of whether a municipality can be liable under § 1983 when the plaintiff makes out a constitutional violation but "cannot attribute it to any individual defendant's unconstitutional conduct"). The Court has already concluded that Black fails to plausibly allege any violation of his constitutional rights and, for the reasons above, Black's response does not change that finding. So for that reason among many, Black's claims against the City are dismissed.

**V. State Law Claims**

It is not clear that Black intends to bring analogous claims of false arrest, false imprisonment, and/or malicious prosecution under Michigan law. [6] But to the extent he alleges state law claims, the Court declines to exercise supplemental jurisdiction.

**\*15** A district court may decline to exercise supplemental jurisdiction over claims arising under state law if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). And "[a]s a rule of thumb, ... [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

Thus, having dismissed Black's § 1983 claims, the Court declines to exercise supplemental jurisdiction over any claims or issues arising under Michigan law and so dismisses them without prejudice.

Case 2:25-cv-10514-BRM-DRG ECF No. 55-31, PageID.938 Filed 03/03/26 Page 14 of 15

Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)

## VI. Conclusion

For the above reasons, Defendants' motion to dismiss (ECF No. 15) is GRANTED, and Black's complaint is DISMISSED. A separate judgment will follow.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4220711

---

## Footnotes

1 "[T]he fact-intensive nature of qualified immunity makes it often a bad fit for Rule 12(b)(6).... But this is only a 'general preference,' not an absolute one.... Thus, despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss." *Siefert v. Hamilton County*, 951 F.3d 753, 761–62 (6th Cir. 2020) (citations omitted); *see Crawford*, 15 F.4th at 763 (clarifying that there is no "special rule or presumption against granting motions to dismiss that applies specifically for qualified immunity"); *Kue v. North*, No. 23-2100, 2024 WL 3537650, at *3 (6th Cir. July 25, 2024).

2 The Court considers Black's Fourth Amendment claims of false arrest and false imprisonment simply under the umbrella of Fourth Amendment false arrest. "When a false-imprisonment claim arises out of an alleged false arrest—as it does in this case—those claims are identical, so we will simply refer to those two claims together as a false-arrest claim." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988)).

3 Black similarly argues he "did not disturb a lawful assembly but was merely reacting in self defense to an unlawful disturbance that ... was directed at [him]." (ECF No. 17, PageID.341–342.) But feeling or even being wronged is not a free pass to rant, shout, and swear in public. Sure, the notion that the coach "started it" by making an "imminent threat" to which Black "naturally and instinctively reacted defensively" (*id.* at PageID.337) is relevant in that probable cause is based on the totality of the circumstances. An officer might be slower to find a person disorderly if he has reason to rant and rave, especially if his anger can be subdued. And defendants *were* sensitive to what Black relayed, giving Black the benefit of the doubt, validating his frustrations, reassuring him they were taking his complaint seriously, and proceeding to investigate his complaint.

But a speaker is no more immune from punishment for his disorderly reaction to someone else's speech than he is immune simply because he utters protected speech while being disorderly. So to the extent Black concedes he was screaming and swearing but contends he was justified because he was threatened, he does not negate the fact that there was probable cause to find him disorderly.

4 "That [Black] in this case has proceeded pro se does not alter this conclusion. Although we liberally construe the pleadings of a pro se litigant, [plaintiff]'s failure to include any statement of the 'circumstances, occurrences, and events' giving rise to the claim leaves [the Court] with nothing to construe." *Armengau*, 7 F. App'x at 345 (citation omitted).

5 Other courts have similarly found statistics "in a vacuum" insufficient to support a *Monell* claim. *Greenstone v. Las Vegas Metro. Police Dep't*, No. 23-00290, 2024 WL 385213, at *13 (D. Nev. Jan. 31, 2024) ("[D]istrict

Case 2:25-cv-10514-BRM-DRG , ECF No. 55-31, PageID.939 Filed 03/03/26 Page 15 of 15

**Black v. City of Royal Oak, Not Reported in Fed. Supp. (2024)**

courts within the Ninth Circuit have found statistical arguments insufficient to show facts necessary for alleging an improper custom.... For a 🚩*Monell* claim, context is needed to connect the data to a finding that the individuals who underly the statistic suffered a constitutional violation."); *see Baca v. Anderson*, No. 22-02461, 2023 U.S. Dist. LEXIS 241070, at *16, 2023 WL 11892957 (N.D. Cal. Feb. 23, 2023) ("Without more information, it is impossible for me to evaluate this statistic to determine what (if any) import it may have for a 🚩*Monell* analysis."); *Pellerin v. Lafayette Consol. Gov't*, No. 20-01380, 2023 WL 8814664, at *7 (W.D. La. Dec. 20, 2023); *Weber v. Pierce Cnty. Wis. Dep't of Hum. Servs.*, No. 21-300, 2022 WL 4103931, at *10 (W.D. Wis. Sept. 8, 2022); 🚩*Nance v. City of New York*, No. 09-2786, 2011 WL 2837491, at *3 (E.D.N.Y. July 14, 2011).

6     In his complaint, Black lists the bases for federal question jurisdiction, each on a separate line, as: "First Amendment Retaliation, Fourth Amendment Illegal Search and Seizure, False Arrest, Wrongful Imprisonment, Malicious Prosecution, 🚩42 USC § 1983." (ECF No. 1, PageID.4.) His civil cover sheet more strongly suggests that he brings only federal claims; he described his cause of action as "Violation of Federal 1st and 4th Amendment Civil Rights." (🚩*Id.* at PageID.8.) But the Court does not find that dispositive, as the cover sheet "is not a pleading, but is simply an administrative form for use by the Clerk's Office," *Hawkins v. EverBank Mortg.*, No. 16-83, 2016 WL 9406084, at *3 (W.D. Mich. July 20, 2016), *report and recommendation adopted*, No. 16-83, 2016 WL 4523456 (W.D. Mich. Aug. 30, 2016); *see also* E.D. Mich. LR 3.1.

---

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.