**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


LaDONNA CRUTCHFIELD,
　　an individual,　　　　　　　　　　Case No. 2:25-cv-10514-BRM-DRG
　　　　　Plaintiff,　　　　　　　　　Hon. Brandy R. McMillion

V

CITY OF DETROIT
a municipal corporation,　　　　　　　**PLAINTIFF'S BRIEF IN**
　　　　　　　　　　　　　　　　　　**OPPOSITION TO DEFENDANTS'**
　　　　　　　　　　　　　　　　　　**MOTION FOR SUMMARY**
MARC THOMPSON,　　　　　　　　　　**JUDGMENT**
City of Detroit Police Detective,
Individually, and


ANTHONY WILLIAMS,
City of Detroit Police Officer,
Individually, and


DORIAN HARDY,
City of Detroit Police Officer,
Individually, and


JEREMY MORROW,
City of Detroit Police Officer,
Individually, and


JOSHUA HOLDER,
City of Detroit Police Officer,
Individually, and


MATTHEW MCKINNEY
City of Detroit Police Officer,
Individually, and


SABRINA CARRION,

City of Detroit Police Officer,
Individually.

CAREEMA YOPP,
City of Detroit Police Officer,
Individually.

      Defendants.

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*TABLE OF CONTENTS* ............................................................................................. *iv*

*LOCAL CERTIFICATION* ..........................................................................................*v*

*ISSUES PRESENTED* ............................................................................................. *vi*

*TABLE OF AUTHORITIES* ..................................................................................... *viii*

*STANDARD OF REVIEW* ....................................................................................... *ix*

*INTRODUCTION* ..................................................................................................... *1*

*FACTUAL BACKGROUND* ...................................................................................... *2*

*ARGUMENT* ............................................................................................................. *5*

    **1.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT I (FALSE ARREST & IMPRISONMENT)** ..............................................................5

    **2.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT II (SEARCH & SEIZURE)** ........................................................................11

    **3.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT III (ASSAULT & BATTERY)** ......................................................................15

    **4.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT IV (FALSE LIGHT) AS THERE WAS NO "PUBLIC DISCLOSURE" ASIDE FROM PLAINTIFF'S ARREST** ......................................................................17

    **5.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT V (FAILURE TO INVESTIGATE & SUPPRESSION OF EVIDENCE) AS THIS CLAIM IS DUPLICATIVE OF PLAINTIFF'S FALSE ARREST CLAIM (COUNT I) AND NO EVIDENCE WAS SUPPRESSED AND NO CHARGES AGAINST PLAINTIFF WERE FILED** 19

    **6.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VI (MONELL) AS NO MUNICIPAL LIABILITY CAN ATTACH WITHOUT AN UNDERLYING CONSTITUTIONAL VIOLATION** ........................................................21

    **7.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VII (DUTY TO INTERVENE)** ........................................................23

    **8.    SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VIII (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) AS TO ALL DEFENDANT OFFICERS AS THE OFFICERS' CONDUCT WAS OBJECTIVE REASONABLE, RATHER THAN EXTREME AND OUTRAGEOUS, AND THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY** ........................................................28

*CONCLUSION* ......................................................................................................... *30*

## **LOCAL CERTIFICATION**

I, Ivan L. Land, certify that this document complies with Local Rule 5.1(a) including double spacing (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14-point (for proportional fonts). I certify that it is the appropriate length.

**ISSUES PRESENTED**

1.  SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT I (FALSE ARREST & IMPRISONMENT) AS TO OFC. YOPP FOR LACK OF MATERIAL PERSONAL INVOLVEMENT; THE FAST OFFICERS BASED ON QUALIFIED IMMUNITY AND GOOD-FAITH RELIANCE ON THE FELLOW OFFICER RULE; AND ALL DEFENDANT OFFICERS ON THE BASIS THAT PROBABLE CAUSE EXISTED AND/OR THEY ARE ENTITLED TO QUALIFIED IMMUNITY?

    Plaintiff Responds: No.
    Defendants Respond: Yes.

2.  SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT II (SEARCH & SEIZURE) AS TO ALL DEFENDANTS, EXCEPT OFFICER CARRION, FOR LACK OF MATERIAL PERSONAL INVOLVEMENT; AND ALL DEFENDANT OFFICERS ON THE BASIS THAT THE SEARCH WAS INCIDENT TO A LAWFUL ARREST AND/OR THEY ARE ENTITLED TO QUALIFIED IMMUNITY?

    Plaintiff Responds: No.
    Defendants Respond: Yes.

3.  SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT III (ASSAULT & BATTERY) AS TO OFFICERS THOMPSON AND YOPP FOR ABSENCE OF PHYSICAL CONTACT; AND THE FAST OFFICERS ON THE BASIS THAT ANY CONTACT WAS MINIMAL, PRIVILEGED, AND SUBJECT TO QUALIFIED IMMUNITY?

    Plaintiff Responds: No.
    Defendants Respond: Yes.

4.  SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT IV (FALSE LIGHT) ON THE BASIS THAT THERE WAS NO PUBLIC DISCLOSURE BEYOND PLAINTIFF'S ARREST?

Plaintiff Responds: No.
Defendants Respond: Yes.

5.      SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT V (FAILURE TO INVESTIGATE & SUPPRESSION OF EVIDENCE) ON THE BASIS THAT THE CLAIM IS DUPLICATIVE OF THE FALSE ARREST CLAIM AND THAT NO EVIDENCE WAS SUPPRESSED AND NO CHARGES WERE FILED?

Plaintiff Responds: No.
Defendants Respond: Yes.

6.      SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VI (MONELL) ON THE BASIS THAT NO MUNICIPAL LIABILITY CAN ATTACH WITHOUT AN UNDERLYING CONSTITUTIONAL VIOLATION?

Plaintiff Responds: No.
Defendants Respond: Yes.

7.      SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VII (FAILURE TO INTERVENE) ON THE BASIS THAT PROBABLE CAUSE EXISTED AND/OR THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY; AND AS TO OFC. YOPP BECAUSE THERE WAS NO OPPORTUNITY TO INTERVENE?

Plaintiff Responds: No.
Defendants Respond: Yes.

8.      SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VIII (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) ON THE BASIS THAT THE OFFICERS' CONDUCT WAS OBJECTIVELY REASONABLE, NOT EXTREME AND OUTRAGEOUS, AND THEY ARE ENTITLED TO QUALIFIED IMMUNITY?

Plaintiff Responds: No.
Defendants Respond: Yes.

# TABLE OF AUTHORITIES

**Cases**

*Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999) ............................................. 20, 21

*Beck v. Ohio*, 379 U.S. 89, 91 (1964) ................................................................................ 8

*Brady v. Maryland*, 373 U.S. 83, 87 (1963) .................................................................... 7

*Bunkley v. City of Detroit*, 902 F.3d 552, 562 (6th Cir. 2018) .................................. 25

*Burgess v. Fischer*, 735 F.3d 462, 475–76 (6th Cir. 2013)................................... 24, 28

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)........................................... 22

*Davis v. Mississippi*, 394 U.S. 721, 726–27 (1969)............................................... 12, 15

Duran v. Detroit News, Inc., 200 Mich App 622, 631; 504 NW2d 715 (1993) ........................... 18

Early Detection Center, P.C. v. New York Life Ins. Co., 157 Mich App 618, 631; 403 NW2d 830 (1986).................................................................................................................. 18

*Everson v. Leis*, 556 F.3d 484, 499–500 (6th Cir. 2009)........................................ 26, 27

*Franks v. Delaware*, 438 U.S. 154, 171 (1978)......................................................... 6, 25

*Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).............................. 8, 19, 21

*Hall v. Pizza Hut of Am., Inc.*, 153 Mich App 609, 613–14; 396 NW2d 809 (1986)............. 16, 17

*Hayes v. Florida*, 470 U.S. 811 (1985),.................................................................... 12, 15

*Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011). .............................. 27

*Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) ..................... 22, 23

*Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) .............................. 19, 21

*Payton v. New York*, 445 U.S. 573, 576 (1980)................................................... 5, 11, 25

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)............................................. 23

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305–07 (6th Cir. 2005) ................. 8

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich 594, 602 (1985) ..................................... 29

*Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000)............................................. 22

*Sibron v. New York*, 392 U.S. 40, 63–65 (1968)..................................................... 14, 15

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)....................................................... 24

*United States v. Hensley*, 469 U.S. 221, 231 (1985)..................................................... 11

*United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012)........................................... 11

*United States v. Robinson*, 414 U.S. 218, 235 (1973) ................................................. 14

*Virginia v. Moore*, 553 U.S. 164, 171–73 (2008) ........................................................ 13

Voyticky v. Village of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005). ........................... 5

*Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984)................................................... 6, 11

*White v. City of Vassar*, 157 Mich App 282, 292; 403 NW2d 124 (1987)................... 16

*Whiteley v. Warden*, 401 U.S. 560, 568 (1971) ...................................................... 10, 11

Wong Sun v. United States, 371 U.S. 471, 481–82 (1963) ............................................... 9

**Statutes**

Michigan Compiled Laws § 28.176,............................................................................ 13, 14

## STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Supreme Court has made clear that summary judgment is proper only where the record demonstrates that a party cannot establish an essential element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On qualified immunity, the Court asks whether, taking the facts in Plaintiff's favor, Defendants violated a constitutional right and whether that right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Where the governing Fourth Amendment rule is categorical, such as the rule against warrantless home arrests absent a recognized exception, qualified immunity does not protect conduct that falls within the core of what the Fourth Amendment forbids.

ix

## **INTRODUCTION**

This case should be decided from the constitutional center of gravity and not from the noise Defendants are trying to create around it. Officers went to LaDonna Crutchfield's home and seized her without an arrest warrant, not in the immediate aftermath of a crime, but twenty-seven days later. Officers did so without exigent circumstances, without probable cause, after ignoring direct exculpatory evidence. Officers secured Plaintiff's compliance by falsely telling her that she had missed court. That is not a technical defect. That is precisely the type of shortcut the Fourth Amendment's warrant requirement exists to prevent. Defendants' brief admits there was no arrest warrant and that FAST officers told Plaintiff she had apparently failed to appear for court.

The Supreme Court has long held that the home is where Fourth Amendment protection is at its apex, and that absent exigent circumstances, police may not make a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest.

1

## FACTUAL BACKGROUND

This case arises from the warrantless seizure of Plaintiff from her home on January 23, 2024, nearly a month after the shooting investigation that Defendants state began on December 27, 2023. By Defendants' own admission, the investigation never produced a witness identification of Plaintiff. Defendants admit that Ms. Quentyara Wilson, a witness that was in the location of the shooting was shown a photo lineup containing Plaintiff's photo and did not identify her. Additionally, Defendants also admit that Mr. Kalin Griffin, the actual victim who was shot in the face was shown a lineup containing Plaintiff's photo and did not identify her. These non-identifications are significant because they did not arise from vague or uncorroborated information, but from formal identification procedures involving a witness and a victim with a direct opportunity to identify the suspect. These were actual lineup procedures involving the two most important direct individuals to the offense, and neither identified Plaintiff.

Despite that, Detective Thompson proceeded to construct probable cause from a set of weak and generalized associations.[1] Defendants' own brief states Detective Thompson relied on four things. First, he believed Plaintiff and the suspect had similar appearances and physical features. Second, he believed Plaintiff and the

---

[1] Detective Thompson stated in Footnote 4 (ECF No. 55-1, Page ID. 788) that he reviewed Plaintiff's Bridge Card usage, but he could not have viewed Plaintiff LaDonna Crutchfield's Bridge Card usage because she does not have one.

suspect had a child around the same age. Third, he believed Plaintiff's mother shared an address with the owner of the Ford vehicle driven by the suspect. Fourth, he believed Plaintiff's involvement in a motor-vehicle accident shortly before the shooting "aligned" with the suspect's possession of the Ford vehicle. Defendants' brief characterized probable cause as a "close call," which is already an admission that this was not a straightforward case with robust evidence (See ECF No. 55-1, PageID. 799).

The information Detective Thompson relied on regarding the traffic crash deserves special attention because it shows how thin and distorted Defendants' probable-cause theory really was. Plaintiff was involved in a hit and run that she reported to the Inkster Police Department. Plaintiff's parked unoccupied vehicle was hit while she was at work. The individual left without informing Plaintiff that they had damaged her vehicle.  Yet, Detective Thompson tried to elevate that unrelated property-damage event into a supposed investigative "break" because Detective Thompson believed it somehow "aligned" with the suspect's possession of the Ford vehicle. That is not objective evidence. That is speculation dressed up as analysis.

The lack of urgency is just as important as the lack of evidence. Defendants' own motion describes continuing investigative activity over time, including geofence work and lab submission, but no arrest warrant was sought. That timeline defeats any effort to portray this as a rapidly developing emergency. By the time

3

FAST went to Plaintiff's home, this was no longer a situation demanding immediate field judgment. This was a deliberate decision after weeks of investigation to seize Plaintiff without going to a magistrate first.

The seizure itself occurred at Plaintiff's home. FAST officers came to the residence, knocked, tapped on the window, confirmed Plaintiff's identity, and asked her to step outside. Defendants admit that the officers then told Plaintiff she apparently had missed court and should have received notice in the mail. Defendants try to justify that false statement as a tactic sometimes used to reduce resistance by making an arrest sound minor. But there was no warrant. There was no missed-court warrant. There was no judicial process authorizing the arrest. That false statement was used to secure compliance at the threshold of Plaintiff's home. Defendants also emphasize that Plaintiff was not handcuffed immediately and was later walked toward a police vehicle down the street before cuffs were applied. That does not sanitize the seizure. It confirms that officers used authority at the home to secure compliance first and formalize custody second.

Once Plaintiff was taken to Detroit Detention Center, the weakness of the probable-cause theory became obvious almost immediately. Defendants admit that within roughly ten to fifteen minutes of questioning, Detective Thompson concluded Plaintiff was not the suspect. Plaintiff was then released later that day. That timeline is devastating to Defendants' position because it supports the inference that the pre-

4

arrest theory was not objectively reliable in the first place. A jury could reasonably conclude that if Detective Thompson could determine in minutes that Plaintiff was not the right person once he confronted her, then no reasonable officer should have sent a team to seize her from her home without a warrant in the first place.

## ARGUMENT

1. **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT I (FALSE ARREST & IMPRISONMENT)**

A false arrest is an arrest made without probable cause, meaning without facts and circumstances sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). There is a bigger issue that has arisen when dealing with this case. The bigger issue is the root issue of arresting someone not only without probable cause, but also at their home without an arrest warrant.

The Fourth Amendment prohibits warrantless, nonconsensual entry into a home to effect a routine felony arrest absent exigent circumstances. The United States Supreme Court held that "the Fourth Amendment… prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980). The home receives heightened protection, and any exception to the warrant requirement is "few in number and carefully delineated." *Welsh v. Wisconsin*, 466 U.S. 740, 749–

5

50 (1984). The seriousness of the alleged offense does not alter the constitutional analysis. It does not lower the probable cause threshold or eliminate the warrant requirement. Even where probable cause exists, a warrant is still required absent exigent circumstances, and delay undermines any claim of urgency. *Welsh* at 753.

Not having an arrest warrant is a clear violation of the Fourth Amendment. The violation is compounded by deliberate falsehoods. Officers told Plaintiff she missed court and that a warrant existed. That was false. There was no warrant and no judicial authorization. The Fourth Amendment does not permit officers to fabricate legal authority to obtain compliance. The United States Supreme Court has made clear that the Constitution is violated where officers rely on "deliberate falsehood or… reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Plaintiff's arrest was made at her home without an arrest warrant and each officer admitted that this was done without an arrest warrant. (See Exhibit 1, Six Arresting Officers' Request for Admissions-Alphabetical Order).

Instead, Defendants chose to advance a probable cause theory, and even that theory is flawed. They contend that Detective Thompson believed probable cause existed because Plaintiff allegedly resembled the suspect in appearance and physical features, had children of the same age, had a mother who shared an address with the registered owner of the Ford vehicle driven by the suspect, and had been involved in a motor vehicle accident shortly before the shooting that purportedly "aligned"

6

with the suspect's use of that vehicle. Defendant Thompson's argument is disingenuous. He attempts to justify probable cause by relying on three asserted grounds, but those justifications are not supported by the record. Plaintiff makes this statement because a witness Quentyara Wilson was shown a photo lineup with Plaintiff's photo and did not identify Plaintiff. (See ECF No. 31-2, PageID. 401-07). Furthermore, and more importantly, the victim failed to identify Plaintiff as the female suspect that shot him. (See ECF No. 31-3, PageID. 408-14). These important individuals' non-identification of Plaintiff is exculpatory evidence which defeats probable cause. Exculpatory evidence includes any evidence favorable to the accused that is material to guilt or punishment, including both substantive evidence of innocence and impeachment material. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Then Defendant says probable cause is established because a hit and run that happened a month prior to the shooting. We note for this court that Defendant Thompson did not do any investigation to determine what this hit and run was regarding. Detective Thompson made the determination that Plaintiff was involved in the hit and run. However, if Detective Thompson had contacted the Inkster Police Department, he would have learned that in fact, Plaintiff was not a suspect in a hit and run, she was the victim. (See Exhibit 2, Inkster Police Department Report). Plaintiff's parked, unoccupied vehicle was hit while she was at work and the individual who hit her vehicle left.

7

The assertion that probable cause existed does not withstand scrutiny. Probable cause requires objective facts sufficient to warrant a reasonable belief that the suspect committed an offense. The United States Supreme Court stated that probable cause requires facts "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). It cannot rest on speculation or "mere suspicion." *Beck at* 96. The reliance on generalized similarities and tenuous associations, without direct linkage to the offense, falls short of that standard.

The failure to account for exculpatory evidence further defeats any claim of probable cause. Officers may not ignore evidence suggesting innocence. The United States Court of Appeals for the Sixth Circuit has held that officers cannot "ignore information… that tends to negate probable cause." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). The Sixth Circuit has likewise denied qualified immunity where officers disregarded facts undermining their theory. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305–07 (6th Cir. 2005). The failure of both the victim and a key eyewitness to identify Plaintiff is direct exculpatory evidence that was disregarded. Therefore, Detective Thompson lacked probable cause to arrest Plaintiff.

"The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police,

8

to assess the weight and credibility of the information which the complaining officer adduces as probable cause. Cf. *Jones v. United States*, 362 U.S. 257, 270 (1960). To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant would subvert this fundamental policy." *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963). Defendants further argue that all Defendants have probable cause. The same probable cause analysis can be used against each of the other officers which none of them had any information regarding probable cause.

The most disturbing thing is what Sergeant Anthony Williams placed in his affidavit. Sergeant Williams stated the following:

- "On or about, January 19, 2024, I was assigned as the officer-in-charge OIC of the FAST apprehension of Ms. LaDonna Crutchfield ('Ms. Crutchfield')." (See ECF No. 55-23, Page ID. 886, ¶ 8).
- "The POI Report relative to Ms. Crutchfield stated that she was wanted in connection with an Assault with intent to Murder ('AWIM') occurring on December 28, 2023." (See ECF No. 55-23, Page ID. 886, ¶ 9).
- "The POI Report stated further that Detective Marc Thompson ('Det. Thompson') had established probable cause for Ms. Crutchfield's arrest through his investigation..." (See ECF No. 55-23, Page ID. 886, ¶ 10).
- "Given these considerations, I did not find it necessary to question Det. Thompson further regarding the facts, circumstances, or evidence uncovered during his investigation before briefing the FAST Team members who were assisting in the apprehension." (See ECF No. 55-23, Page ID. 887, ¶ 11).

9

- "On the afternoon of January 23, 2024, I and members of FAST arrived at Ms. Crutchfield's home for the purpose of placing her under arrest." (See ECF No. 55-23, Page ID. 887, ¶ 12).

Basically, Sergeant Williams relied on a Person of Interest Report without even discussing the matter with Detective Thompson. Then Defendants admitted in their brief, "While provided only a summary of the circumstances purportedly establishing probable cause, nothing in this summary gave Ofc. Williams reason to question Det. Thompson's apprehension request before briefing the FAST Officers on their assignment." (See ECF No. 55-1, Page ID. 797, Paragraph 9). Defendants' position reduces to a chain of unsupported reliance. The officers acknowledge the absence of a warrant and contend they relied on Sergeant Williams, who himself lacked probable cause and relied on Detective Thompson, who likewise lacked probable cause.

Next, Defendants argue the collective knowledge doctrine. Reliance on another officer's conclusion does not salvage the arrest. The collective knowledge doctrine applies only if the initiating officer actually had probable cause. The United States Supreme Court held that an arrest cannot stand where the originating officer lacked probable cause because the "arrest warrant was invalid" at its source. *Whiteley v. Warden*, 401 U.S. 560, 568 (1971). The United States Supreme Court reaffirmed that reliance is permissible only where the originating information itself is sufficient. *United States v. Hensley*, 469 U.S. 221, 231 (1985). The United States

Court of Appeals for the Sixth Circuit follows this rule and recognizes that if the initiating officer lacks probable cause, the resulting arrest is unconstitutional. *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Cited in numerous cases, neither Detective Thompson nor Sergeant Williams can be relied upon to establish probable cause to the other officers. Finally, Defendants' own timeline, spanning over 27 days, eliminates any claim of urgency. The United States Supreme Court has recognized that delay "undercut[s] the claim of urgency." *Welsh* at 753.

Plaintiff proves that Defendants should not be entitled to qualified immunity. There was a clear constitutional violation as Plaintiff was arrested at her home without probable cause and with no arrest warrant. These constitutional violations were clearly established before January 23, 2024, in *Payton v. New York*; *Beck v. Ohio*; *Whiteley v. Warden*. However, Plaintiff does agree that Officer Yopp is not liable under this count.

## 2. SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT II (SEARCH & SEIZURE)

Defendants' argument fails because it reframes Plaintiff's Fourth Amendment claim into something it is not. This case does not concern the seizure of property. It concerns the seizure of Plaintiff herself, her person, and the subsequent searches conducted upon her body, including her detention, physical pat-down, fingerprinting, and compelled DNA collection. That distinction is not semantic; it is constitutional.

11

The Fourth Amendment affords its highest level of protection to the person. As the Supreme Court has long recognized, "the Fourth Amendment prohibits the seizure and detention or search of an individual's person unless there is probable cause to believe that he has committed a crime." *Davis v. Mississippi*, 394 U.S. 721, 726–27 (1969). In *Davis*, law enforcement detained individuals without probable cause for the purpose of fingerprinting them during a criminal investigation. The Court held that such detentions violated the Fourth Amendment and, critically, that the fingerprint evidence obtained as a result was tainted by the unlawful seizure. *Davis* at 724–28. The Court rejected any suggestion that fingerprinting is exempt from constitutional scrutiny simply because it is routine; instead, it emphasized that when identification procedures are the product of an unlawful detention, they are themselves unconstitutional. *Davis* at 724-27.

Similarly, in *Hayes v. Florida*, 470 U.S. 811 (1985), officers took a suspect from his home to the police station for fingerprinting without probable cause or a warrant. The Court held that this conduct violated the Fourth Amendment, explaining that the removal of a person from their home and detention at a police facility for investigative identification procedures constitutes a seizure requiring probable cause. *Hayes* at 815–16. The Court explicitly rejected the argument that such conduct could be justified as a lesser intrusion under *Terry*, reaffirming that

12

investigative detentions of this magnitude fall squarely within the protections governing arrests.

Taken together, these cases establish a clear and longstanding constitutional rule: the government may not seize a person, transport that person to a police facility, and subject them to investigative or identification procedures—such as fingerprinting or DNA collection—absent probable cause.

As established in the preceding section, probable cause did not exist here. That conclusion is dispositive of Defendants' search-and-seizure argument.

Defendants attempt to justify their conduct by invoking Michigan Compiled Laws § 28.176, which permits the collection of DNA from certain individuals following arrest. That clause does not control the constitution. By its plain terms and necessary operation, it applies only where there has been a lawful arrest supported by probable cause. It does not authorize the detention of an individual in the absence of probable cause, nor does it permit law enforcement to bootstrap constitutional compliance by pointing to a post-arrest administrative procedure.

A state statute cannot override the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 171–73 (2008). Thus, even where a statute permits certain conduct following an arrest, that statute operates within constitutional limits. It cannot render lawful what the Constitution forbids. The arrest here was not supported by probable cause, Defendants' reliance on MCL § 28.176 is irrelevant.

13

The Supreme Court has consistently held that a search incident to arrest is valid only where the arrest itself is lawful. *United States v. Robinson*, 414 U.S. 218, 235 (1973). That doctrine does not provide an independent justification for a search; rather, it is entirely derivative of the arrest. Without a lawful arrest, there is no lawful search incident to arrest.

Likewise, in *Sibron*, the Court invalidated a search where the officer lacked a lawful basis to detain the individual in the first place, making clear that a search cannot be justified by an unlawful seizure. *Sibron v. New York*, 392 U.S. 40, 63–65 (1968). The Court rejected the very type of reasoning Defendants advance here attempting to validate a search while ignoring the constitutional defect in the underlying seizure.

Applying these principles here, the result is clear. Ms. Crutchfield was seized without actual probable cause, transported, detained, and subjected to searches of her person, including fingerprinting and DNA collection. The underlying seizure was unlawful, each of those searches is likewise unconstitutional. **What is most disturbing about this case is that when Detective Thompson interrogated Plaintiff at the Detroit Detention Center realizing she was not the suspect, he still told Plaintiff she had to be processed and that's when Plaintiff's DNA was taken.**

14

Finally, Defendants are not entitled to qualified immunity. Plaintiff's constitutional rights were violated as she was subject to a search and seizure when Defendants did not have probable cause.

Qualified immunity does not apply where officers violate clearly established rights. It has long been settled that seizures require probable cause, *Beck at* 91, that individuals cannot be transported or detained for investigation without probable cause, *Hayes at* 815–16, and that searches arising from an unlawful seizure are invalid, *Davis at* 724–28; *Sibron at* 63–65 .

These principles place the violation beyond debate. Any reasonable officer would have understood that seizing Ms. Crutchfield without probable cause and subjecting her to searches of her person violated the Fourth Amendment. Because the seizure was unlawful, the resulting search was unlawful, and Defendants are not entitled to qualified immunity. Summary judgment must be denied.

### 3. SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT III (ASSAULT & BATTERY)

Defendants' argument rests entirely on the premise that the arrest was lawful. Under Michigan law, that premise controls. Officers are privileged to use reasonable force when effecting a lawful arrest, but that privilege collapses when the arrest itself is unlawful. The inquiry is not whether the force was minimal or politely applied as Defendants argued, but whether the touching was legally justified at all.

15

Michigan law defines a false arrest as an "illegal or unjustified arrest," and the legality of the arrest turns on whether the officer had a legal right to act. *Hall v. Pizza Hut of Am., Inc.*, 153 Mich App 609, 613–14; 396 NW2d 809 (1986). Where that legal justification exists, the arrest is privileged. Where it does not, the officer's authority to detain and physically control the individual disappears.

Michigan law further recognizes that an officer may use only such force as is reasonably necessary to effect a lawful arrest. *White v. City of Vassar*, 157 Mich App 282, 292; 403 NW2d 124 (1987). The privilege to touch arises from the legality of the arrest itself. If the arrest is not lawful, there is no privilege to seize, restrain, or apply any degree of force.

Defendants attempt to shift the focus to tone and minimal force. Michigan law does not immunize unconstitutional conduct simply because it was carried out calmly. The question is whether the arrest was justified. If it was not, any physical contact used to accomplish it is unprivileged.

That principle applies here. If a jury finds that the arrest lacked a warrant, lacked exigent circumstances, and lacked probable cause, then the pat-down, handcuffing, escort from the home, and transport to jail are intentional, unconsented touchings sufficient to establish battery under Michigan law.

Defendants make a failed attempt to Michigan law also distinguishes between merely providing information and **directing or instigating** an arrest. Where a party

16

"merely gives information" and leaves the decision to law enforcement, liability does not attach. *Hall at* 614–15. However, where directing or instigating an arrest like Detective Thompson did by telling the FAST Officers he had probable cause liability does attach. Here, Defendants admit FAST Officers acted on Detective Thompson's probable cause determination. A reasonable jury could find that Detective Thompson caused the assault and battery to occur.

For the officers who executed the assault and battery, any privilege depends on the legality of the arrest. The legality of the arrest is disputed; summary judgment is improper. Whether the arrest was lawful, and whether the force was therefore privileged, is a question for the jury. Accordingly, because the privilege to use force depends on the legality of the arrest, and that legality is disputed, a reasonable jury could find that Defendants' physical seizure of Plaintiff was unprivileged and constituted assault and battery under Michigan law.

4. **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT IV (FALSE LIGHT) AS THERE WAS NO "PUBLIC DISCLOSURE" ASIDE FROM PLAINTIFF'S ARREST**

Defendants attempt to reduce the false light claim to a derivative of probable cause, but Michigan law treats false light as a distinct tort focused on public portrayal. False light occurs where a defendant gives publicity to a matter that places another "before the public in a false light" that would be "highly offensive to a

17

reasonable person." *Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich App 618, 631; 403 NW2d 830 (1986).

A jury could find that standard satisfied here. Plaintiff was publicly seized at her home by multiple officers, told she had to go to jail, falsely informed that she had missed court and should have received notice, and escorted from her home in view of her children and neighbors. She was then processed as the suspect in a shooting before officers determined within minutes that they had the wrong person. That sequence placed Plaintiff before the public in a false position as a criminal suspect.

Defendants argue there was no press release or media statement. Michigan law does not require formal media publication. The focus is whether the plaintiff was publicly portrayed in a false manner. *Duran v. Detroit News, Inc.*, 200 Mich App 622, 631; 504 NW2d 715 (1993).

Furthermore, Defendants attempt to state the only broadcasting done was by Plaintiff and her counsel by having a news release. However, Defendants do not realize Plaintiff was forced to do a news release due to many neighbors asking her why she was arrested, not to mention the ridicule her children faced at school due to this arrest. Arresting Officers themselves created the public portrayal through the arrest. If a jury finds the arrest lacked a lawful basis, it may also find that Defendants publicly cast Plaintiff in a false and highly offensive light.

18

Accordingly, because the claim turns on public portrayal and the underlying facts remain disputed, a reasonable jury could find Defendants placed Plaintiff in a false light, and summary judgment is improper.

**5. SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT V (FAILURE TO INVESTIGATE & SUPPRESSION OF EVIDENCE) AS THIS CLAIM IS DUPLICATIVE OF PLAINTIFF'S FALSE ARREST CLAIM (COUNT I) AND NO EVIDENCE WAS SUPPRESSED AND NO CHARGES AGAINST PLAINTIFF WERE FILED**

The determination of probable cause is ordinarily a question of fact for the jury, particularly where the underlying facts are disputed. Only where the material facts are undisputed and permit but one reasonable conclusion may the issue be decided as a matter of law.

"The existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008).

"Whether probable cause exists is a question for the jury unless there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Defendants' argument rests on an unduly narrow view of exculpatory evidence.

That principle is not limited to the prosecutorial stage. It informs whether probable cause exists at the time of arrest. Officers are not permitted to ignore or

19

withhold known facts that materially undermine probable cause. Here, the December 27, 2023 failed identification by a witness and the January 4, 2024 failed identification by the victim are directly exculpatory. Those facts cut against the existence of probable cause, yet they were not conveyed to FAST and were not included in the POI viewed by Sergeant Williams.

The omission of those facts is significant because the officers who carried out the arrest acted on an incomplete and misleading factual record. The Constitution does not require officers to conduct a perfect investigation, but it does require that they not disregard readily available exculpatory information. "An officer cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999).

The record further reflects a failure to conduct even minimal investigative steps. Detective Thompson relied on information obtained on January 11, 2024 suggesting Plaintiff's involvement in a prior hit and run. A basic inquiry would have revealed that Plaintiff was not a suspect but a victim. Detective Thompson knew the incident occurred in Inkster, and a simple review of the police report or contact with the Inkster Police Department would have confirmed the true nature of the incident, identified a different vehicle, and provided Plaintiff's correct identifying information. These were readily available facts that directly contradicted the asserted basis for probable cause.

20

This was not a rapidly evolving situation. There was an eight-day period between January 11, 2024 and January 19, 2024 during which the information could have been verified and corrected. No such investigation occurred. That lapse underscores that the arrest was not the product of a reasonable assessment of the totality of the circumstances, but of a selective reliance on incomplete information.

When considered together, the failures to account for failed identifications, to verify readily available information, and to communicate exculpatory facts to the arresting officers support a finding that probable cause was lacking. Probable cause must be evaluated based on the totality of the circumstances, including both inculpatory and exculpatory information, a reasonable jury could conclude that these omissions and investigative failures negated probable cause.

Accordingly, the failure to investigate, the disregard of exculpatory evidence, and the reliance on incomplete information to effectuate Plaintiff's arrest constitute a constitutional violation. That right was clearly established under *Gardenhire v. Schubert*, *Parsons v. City of Pontiac*, and *Ahlers v. Schebil*, and Defendants are not entitled to qualified immunity or summary judgment.

**6. SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VI (MONELL) AS NO MUNICIPAL LIABILITY CAN ATTACH WITHOUT AN UNDERLYING CONSTITUTIONAL VIOLATION**

21

Defendants correctly note that municipal liability under § 1983 requires an underlying constitutional violation. That principle does not resolve the claim here because the underlying claims remain in dispute.

"A municipality cannot be held liable under § 1983 where there is no underlying constitutional violation." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Where a constitutional violation is supported by the record, a municipal liability claim may proceed. *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000).

Counts I, II, and VII present triable issues, Count VI cannot be dismissed on a derivative theory. The record also supports municipal liability based on policy, custom, or practice. Plaintiff has presented evidence that officers represented it was acceptable to use false statements about warrants or court obligations to secure compliance during arrests. Furthermore, this case involves Defendant supervisors directing officers to make warrantless home arrests. These violations are concerning. A reasonable jury could view that conduct not as an isolated incident, but as a reflection of a broader practice.

A municipality is liable under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

22

A custom may arise from practices that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

Where officers are trained, permitted, or tacitly encouraged to misrepresent the existence of a warrant, that practice replaces the judicial determination required by the Fourth Amendment. It allows officers to accomplish through deception what cannot be done through lawful process. A reasonable jury could find such a custom was the moving force behind Plaintiff's arrest.

Defendants' attempt to resolve municipal liability at this stage is also premature. Municipal liability often turns on evidence regarding policy, custom, training, and supervision developed through discovery. "Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Defendants acknowledge that *Monell* and damages discovery has not been fully developed. On that record, summary judgment is not appropriate. Plaintiff also clarifies that municipal liability proceeds through Count VI.

The underlying constitutional claims remain, and because the record supports a policy or custom theory, a reasonable jury could find municipal liability. Under *Monell*, *Scott*, and *Pembaur*, Defendants' motion should be denied.

**7. SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VII (DUTY TO INTERVENE)**

23

It is well established that an officer who is present during a constitutional violation and fails to take reasonable steps to prevent it may be held liable under 42 U.S.C. § 1983. An officer is liable where he "observed or had reason to know that a constitutional violation was occurring" and had both "the opportunity and the means to prevent the harm." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). That duty is not passive and applies where an officer fails to act despite awareness of the violation. *Turner* at 429.

The Sixth Circuit has made clear that whether an officer failed to intervene turns on the facts, including whether the officer had sufficient time to perceive the violation and act. *Burgess v. Fischer*, 735 F.3d 462, 475–76 (6th Cir. 2013). Where the record permits a reasonable inference that officers observed unconstitutional conduct and had the opportunity to intervene, summary judgment is improper because those determinations cannot be resolved as a matter of law. *Burgess* at 475-76.

Here, the constitutional violation is clear. Plaintiff was seized at her home on January 23, 2024, based on an alleged offense from December 27, 2023, yet no warrant was obtained during that nearly month-long period and no exigent circumstances existed. The Fourth Amendment draws a firm line at the entrance to the home, and warrantless entries to effectuate an arrest are "presumptively

24

unreasonable." *Payton at* 586. That principle applies directly here, where officers bypassed judicial review despite having weeks to obtain a warrant.

The manner in which the arrest was carried out further confirms the violation. At the scene, Officer Hardy told Plaintiff, "You basically had to go to court… we have a warrant for your arrest," representing that Plaintiff had missed a court date and that a valid warrant existed. (See ECF No. 3-2, PageID. 58, Sergeant Williams' Body Worn Camera). That statement was false. There was no missed court date and no warrant. The Constitution does not permit officers to fabricate legal authority to effectuate a seizure, and deliberate falsehoods used to justify an arrest undermine the Fourth Amendment itself. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

Under these circumstances, each officer present had an independent obligation to assess the legality of the arrest rather than defer blindly to another officer's conclusion. Officers may rely on information from others only where that reliance is objectively reasonable in light of the known facts, and instructions from another officer are not enough where the surrounding circumstances reveal the absence of probable cause. *Bunkley v. City of Detroit*, 902 F.3d 552, 562 (6th Cir. 2018). Here, the absence of a warrant, the lack of exigent circumstances, and the fabricated justification made the constitutional deficiency apparent.

This was not a rapidly evolving situation requiring split-second judgment. It was a delayed arrest with ample time to question the basis for the seizure. Officers

25

had the opportunity to verify whether a warrant existed, to assess whether probable cause was supported, and to refuse participation if it was not. Their failure to do so constitutes a failure to intervene under clearly established law.

Officer Yopp's role further underscores that failure. Prior to the January 23, 2024, arrest, there had already been a non-identification on January 4, 2024, which was the last information available to Officer Yopp: "Prior to this notice, I was unaware that Det. Thompson had requested Ms. Crutchfield's apprehension by FAST, nor had I been informed of any developments in the investigation occurring after January 4, 2024, when I'd presented the photo line-up to Mr. Griffin." (See ECF No. 55-27, PageID. 898, Officer Yopp's Affidavit, ¶ 6). Officer Yopp's last involvement on the case admitted in her Affidavit is when she interviewed the victim and he failed to identify Plaintiff. Detective Thompson had a duty to release Plaintiff, but instead Officer Yopp, who was present, allowed the interview to continue and failed to intervene. (See Exhibit 3, Officer Yopp Request for Admissions, ¶ 7). Furthermore, and more disturbing, Officer Yopp was asked in her Request for Admissions was Plaintiff free to leave and she admitted that she was not free to leave. (See Exhibit 3, Officer Yopp Request for Admissions, ¶ 9).

Defendants' reliance on two cases cited on qualified immunity are misplaced. Qualified immunity protects reasonable mistakes where officers make real-time judgments based on facts that could support probable cause. In *Everson v. Leis*, the

26

Sixth Circuit applied immunity where officers acted on information available during an ongoing investigation and reasonably, though mistakenly, believed probable cause existed. *Everson v. Leis*, 556 F.3d 484, 499–500 (6th Cir. 2009). In *Kennedy v. City of Villa Hills*, the court likewise emphasized that qualified immunity protects an officer who "reasonably but mistakenly concludes that probable cause is present" based on the facts confronting him at the time of the arrest. *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011).

Those circumstances are misplaced. Both of these cases have **absolutely** nothing to do with failure to intervene. Both *Everson* and *Kennedy* involved contemporaneous, on-the-spot determinations made during developing situations where officers were required to assess probable cause in real time.

All that matters is that every officer sat around while a warrantless arrest was conducted at Plaintiff's home. Adding insult to injury, the officers allowed Officer Hardy to lie about Plaintiff missing a court date. Officer Yopp was present at the interrogation of Plaintiff on January 23, 2024, after the non-identification of Plaintiff on January 4, 2024, and did not order for the immediate release of Plaintiff. (See Exhibit 3, Officer Yopp Request for Admissions, ¶ 7)

At a minimum, the record permits a reasonable inference that the officers present observed the unlawful arrest, understood its deficiencies, and had sufficient time to intervene but failed to act. Under Sixth Circuit law, that determination is for

27

the jury. *Burgess* at 475. Defendants' position would improperly immunize officers who participate in unlawful arrests so long as they were not the primary decision-maker. The Constitution does not permit officers to stand idle, rely on fabricated authority, or ignore exculpatory evidence to avoid liability. The officers failed to intervene in a warrantless home arrest lacking probable cause, exigent circumstances, and lawful authority, summary judgment must be denied.

The constitutional violation occurred where officers failed to intervene, and it was clearly established well before January 23, 2024, that an officer who observes or has reason to know of a constitutional violation and has the opportunity to prevent it, yet fails to act, is liable under § 1983. *Turner*, 119 F.3d at 429. Officers cannot remain passive in the face of unlawful conduct, and failure to intervene presents a jury question where time and opportunity exist. *Burgess*, 735 F.3d at 475–76. Under this settled law, any reasonable officer would have understood that failing to intervene in a warrantless, unsupported arrest violated the Fourth Amendment, and Defendants are not entitled to qualified immunity.

8. **SHOULD SUMMARY JUDGMENT BE GRANTED IN FAVOR OF DEFENDANTS AS TO COUNT VIII (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) AS TO ALL DEFENDANT OFFICERS AS THE OFFICERS' CONDUCT WAS OBJECTIVE REASONABLE, RATHER THAN EXTREME AND OUTRAGEOUS, AND THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY**

Defendants frame their conduct as too restrained to be outrageous, but that framing ignores the nature of the authority exercised. Under Michigan law,

intentional infliction of emotional distress requires conduct that is "extreme and outrageous," meaning conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich 594, 602–03 (1985).

A jury could find that standard met here. Multiple officers arrived at Plaintiff's home without a warrant, falsely told her she had missed court, required her to come outside with minimal clothing while her children remained inside, seized her, transported her to jail, and processed her as a violent offender before determining within minutes that they had the wrong person. Once they determined she was the wrong person, they did not allow her to immediately leave, she was ordered back to her cell and required to give her DNA to leave. That is not a routine arrest. It is a misuse of police authority with immediate and severe personal consequences.

Defendants rely on *Akima v. Peca* to argue that IIED requires knowingly false conduct. That is incorrect. Michigan law permits liability where conduct is at least reckless, including where a defendant acts in deliberate disregard of a high probability that emotional distress will result. *Roberts* at 602. If a jury finds that probable cause was constructed while ignoring known exculpatory information, it could conclude the conduct was, at minimum, reckless.

Courts recognize that the misuse of police authority can satisfy the "extreme and outrageous" standard where the conduct itself reflects an abuse of power. The

29

inquiry does not turn on whether officers spoke calmly. It turns on whether the conduct, viewed in context, exceeds all bounds of decency. Being taken from one's home without a warrant, in front of family, and jailed under false pretenses is sufficient to meet that standard.

Defendants' focus on tone is misplaced. The law focuses on the nature of the conduct. On this record, whether Defendants' actions were extreme and outrageous is a question for the jury. A reasonable jury could find that Defendants misused their authority to unlawfully seize and jail Plaintiff under false pretenses, Defendants' motion must be denied.

## CONCLUSION

Defendants' motion fails because the record shows a warrantless home arrest without exigent circumstances or probable cause, in violation of clearly established Fourth Amendment law.

Defendants' probable cause theory relies on speculation while ignoring direct exculpatory evidence, including two failed identifications. No reasonable officer could find probable cause on this record. The lack of a warrant, combined with the use of a false statement to secure compliance, underscores the constitutional violation.

The collective knowledge doctrine does not apply because the initiating officer lacked probable cause, and that defect carries through to all officers.

30

Because the seizure was unlawful, the resulting detention, searches, and battery are likewise unlawful. The remaining claims survive for the same reason, and qualified immunity does not apply.

Where probable cause is absent, the seizure, search, and battery are all unconstitutional. Summary judgment must be denied.

Dated: April 3, 2026

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

31

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Court Clerk via CM/ECF on April 3, 2026 to serve all parties.


Dated: April 3, 2026                    Respectfully Submitted,

                                        /s/Ivan L. Land
                                        Ivan L. Land (P65879)

32